*In re* MARRIAGE OF SHOSHANA WINTON, Petitioner-Appellee, and JEFFREY B. WINTON, Respondent-Appellant (David I. Grund, Appellee).

Second District   No. 2—90—0592

Opinion filed April 19, 1991.—Rehearing denied June 11, 1991.

E. Kenneth Suskin, of Suskin, Menachof & Associates, Ltd., of Liber-tyville, and Matthew Kaplan, of Waukegan, for appellant.

Stephen H. Katz, of Waukegan, and David I. Grund, of Grund, Marcus, McNish, Knabe & Nadler, and Gerald L. Fishman, of Fishman & Merrick, P.C., both of Chicago, for appellee David I. Grund.

JUSTICE BOWMAN delivered the opinion of the court:

Respondent, Jeffrey B. Winton, is appealing two orders entered in a dissolution proceeding wherein his marriage to petitioner, Shoshana Winton, was dissolved. He raises three issues on appeal: (1) whether the trial court erred in ordering him to pay attorney fees to one of petitioner's attorneys, David Grund, in the amount of $13,205.56 based, in part, on an hourly rate of $250 for court time, a rate which the trial court found to be excessive; (2) whether the trial

court erred in ordering him to pay $6,029.33 for expert's fees when there was no proof of the reasonableness of the fees; and (3) whether the trial court erred in finding respondent in contempt for violation of court orders.

A judgment of dissolution of marriage was entered February 13, 1990, which incorporated an agreement of the parties as to the division of marital property and other issues. That same day, petitioner's attorney, David Grund, filed a petition for attorney fees and costs, stating his customary and reasonable charge for representation in such actions was $175 per hour for noncourt time and $250 per hour for court time, and he had expended 100.4 hours of office time and 33.4 hours of court-related time in handling the case. The petition further stated that other persons in his office had expended time on the case. The itemized statements attached to the petition showed that his office had billed petitioner a total of $34,308.35 for attorney fees and costs. This included $2,500 paid to Jerome Lipman, an accountant retained by Grund for the purpose of auditing and evaluating respondent's businesses. The itemized billings also reflected that petitioner had paid Grund a $2,500 retainer. Pursuant to a court order which followed a petition for temporary attorney fees and expert costs, respondent had paid $8,000, and petitioner had paid an additional $4,000. The balance claimed by Grund was $19,808.35.

The petition further stated that attorney Stephen H. Katz was hired as co-counsel for petitioner and that his fees totalled $4,860, based on an hourly rate of $175. The petition further stated that Jerome Lipman was still owed a balance of $9,044.90. Lipman's invoice was attached to the petition. It showed total charges of $11,544.90, and reflected the payment of $2,500. The statement listed the services performed by Lipman but did not state the date any of the services were performed, the amount of time spent on any of the listed activities, or the hourly rate charged. Lipman's nine-page curriculum vitae is also included in the record.

A hearing regarding the attorney fees petition was held on April 23, 1990. No court reporter was present, but a bystander's report of the proceedings was certified by the trial judge. According to the report, respondent challenged various items included in Grund's billings and the reasonableness of the fees in general. He also presented to the court a copy of the "valuation report" prepared by Lipman and testified that, in his opinion, the value of Lipman's work was perhaps $2,500, but not $11,000.

The five-page report prepared by Lipman is included in the record. The first two pages consist of Lipman's opinion of the value of

respondent's 50% interest in a corporation, Radionic Hi-Tech, Inc., and a short statement of the documents reviewed and the accounting method used in making his determination. Page three of the report states:

"RADIONIC HI-TECH, INC.
SCHEDULE OF TOTAL VALUE
JULY 31, 1989

| | |
|---|---|
| BOOK VALUE | 231,941 |
| ROYALTY RECEIVABLE | 27,800 |
| TOTAL VALUE | 259,741 |
| 50% INTEREST | 129,871" |

Page four is a copy of the balance sheet of the corporation showing the $231,941 figure, and page five is a five-line computation of the royalty receivable figure.

Following the hearing, an order was entered on May 3, 1990, in which the court found that, under the circumstances of this case, $175 per hour was the appropriate rate of compensation for Grund for both court and office time. It further found that "[w]hile [respondent] disputes some double counting of items and disputes the value of Jerome Lippman's [sic] services, the record is devoid of evidence that such double counting took place or that Lippman's [sic] services were overpriced or otherwise unreasonable." The court then found that respondent should pay two-thirds of the fees of Grund, Katz, and Lipman and ordered that he pay $13,205.56 to Grund, $3,240 to Katz, and $6,029.33 to Lipman.

On April 16, 1990, petitioner filed a petition for rule to show cause alleging that respondent failed to pay $316 in court-ordered child support and maintenance and $11,500 for a new car pursuant to the terms of the marital settlement agreement. A hearing was held regarding the petition, and an order was entered May 18, 1990, *nunc pro tunc* to May 3, 1990, which found respondent in contempt for failing to comply with the judgment of dissolution of marriage. The order further stated that "[t]his cause is continued to May 18, 1990 for the purpose of conducting a hearing on appropriate sanctions to be imposed upon [respondent] in connection with findings of contempt." A subsequent order, also dated May 18, 1990, stated that respondent had purged himself of contempt by making the required payments. No penalty was therefore assessed.

Respondent has appealed from the orders awarding attorney and expert witness fees and the orders which found him in contempt.

Respondent contends the court erred in finding him in willful contempt of court. We note that neither the order finding respondent in contempt nor, as far as we can discern, anything else in the record shows that the court characterized respondent's contempt as willful. Respondent, however, cites *People v. Boucher* (1989), 179 Ill. App. 3d 832, for the following principles: (1) only willful violations of court orders constitute contempt, and (2) insofar as the nature of the contempt found against respondent was criminal, his innocent and well-justified state of mind in refusing to pay was relevant. Respondent evidently concludes that the court *must have* found him in willful contempt and argues that the court wrongly disregarded evidence that his conduct was not willful in nature. Specifically, respondent focuses on (1) evidence which showed that his refusal to pay petitioner's claim was the result of a good-faith and well-founded dispute over the amount owed, and (2) evidence of his motivation and right to withhold part of a support payment.

■ We observe initially that respondent errs in characterizing the finding of the trial court as criminal contempt. A "criminal contempt" is conduct directed against the majesty of the law or the dignity and authority of the court or judge acting judiciously, whereas a "civil contempt" ordinarily consists in failing to do something ordered to be done by a court in a civil action for the benefit of an opposing party therein. (*Sullivan v. Sullivan* (1973), 16 Ill. App. 3d 549, 551-52.) The test for determining if a contempt proceeding involves criminal contempt or civil contempt is whether the proceeding, in the totality of the circumstances, is coercive or punitive. *In re Marriage of Miller* (1980), 88 Ill. App. 3d 370, 373.

■ In light of these principles the instant contempt proceeding appears to have involved civil contempt. The record reveals that respondent admitted withholding maintenance payments and failing to provide a formulated amount of money to purchase a new automobile for petitioner as required by the judgment of dissolution of marriage. He justified withholding the maintenance payments because petitioner allegedly owed him money for debts incurred after entry of the judgment of dissolution of marriage, and he disputed the amount of money owed petitioner pursuant to the formula set out in the judgment of dissolution of marriage.

The only reasonable conclusion to be drawn from the record before us is that the trial court found respondent in civil contempt for failing to make payments as provided by the judgment of dissolution of marriage. The record is void of conduct by the respondent directed

against the majesty, dignity, or authority of the court which would justify a finding of criminal contempt.

We note additionally that the case respondent relies on, *People v. Boucher* (1989), 179 Ill. App. 3d 832, is inapposite. *Boucher* is a criminal case involving a violation of probation by defendant. The central issue therein relates to whether the alleged violation of probation must be prosecuted as provided by the Unified Code of Corrections rather than by means of contempt of court.

■ Because respondent has premised his argument on a finding of criminal contempt, citing one inapposite criminal case in support of such argument, we deem respondent's argument and citations of authority to be a violation of Supreme Court Rule 341(e)(7) (134 Ill. 2d R. 341(e)(7)), which provides in pertinent part:

"The appellant's brief shall contain the following parts ***:
* * *
(7) Argument, which shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities ***. Points not argued are waived ***."

■ A court of review is entitled to have the issues clearly defined and to be cited to pertinent authority. (*Rockford Memorial Hospital v. Schueler* (1988), 167 Ill. App. 3d 358, 361-62.) The appellate court is not a depository in which the appellant may drop the burden of argument and research. (*Thrall Car Manufacturing Co. v. Lindquist* (1986), 145 Ill. App. 3d 712, 719.) Arguments which do not satisfy the requirements of Supreme Court Rule 341(e)(7) do not merit consideration on appeal. (*Rockford Memorial Hospital*, 167 Ill. App. 3d at 362.) In consideration of these rules and respondent's failure to present properly his argument on this issue, we find respondent's challenge to the trial court's finding of contempt waived.

■ Regarding the order awarding attorney fees, respondent first argues that the trial court erred in ordering him to pay two-thirds of the entire fee requested by Grund when the court found that a rate of $250 for court time was excessive. We note that petitioner has not filed an appellee's brief. However, Grund has filed a brief on his own behalf. He concedes that the award of attorney fees must be modified based on the trial court's findings. We agree that the amount charged for 33.4 hours of court time must be reduced from $8,350, based on $250 per hour, to $5,845, based on the $175-per-hour rate which the court found appropriate. Thus, the dollar amount of the fees requested by Grund must be be reduced to $17,303.35. Respondent is therefore required to pay two-thirds of that amount or $11,535.56, rather than $13,205.56 as stated in the order.

Respondent next argues that the trial court erred in ordering him to pay a portion of Lipman's fees in the absence of proof of the reasonableness of the fees.

Grund has argued that "a party is not required to prove the reasonableness of hourly rates or any itemizations of the time spent of an expert witness." He contends that cases requiring that an *attorney* must provide detailed itemized records of services rendered simply do not apply to an expert witness. He further argues that, as he entered into a contract with Lipman, on behalf of his client, petitioner, to evaluate respondent's business, it must be presumed that the fees charged are reasonable. We cannot agree.

Initially, we note that the cases cited by Grund do not support his position. The reasonableness of witness fees was not an issue in *Hallmark Personnel, Inc. v. Pickens-Kane Moving & Storage Co.* (1980), 82 Ill. App. 3d 18, cited by Grund for the proposition that "the cost of witness fees are [*sic*] in the trial court's discretion." Also, while the court in *Victory Memorial Hospital v. Rice* (1986), 143 Ill. App. 3d 621, 623-24, does state that, "[i]n Illinois, *** where there is a contract, express or implied, under which one party supplies articles or services to another and there is no provision setting out the amount the supplier is to be compensated, the law implies that there is an agreement to pay a reasonable price for the goods and services," it goes on to state: "[t]herefore, to recover under such a contract, the supplier has the burden of proving that its charges were reasonable." This case cannot be read, as Grund has suggested, to provide authority for the proposition that the fees must be presumed reasonable.

The request for payment of Lipman's fees was part of a petition for attorney fees filed by Grund pursuant to section 508(a) of the Illinois Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1989, ch. 40, par. 508(a)). The statute provides, in pertinent part:

> "The court from time to time, after due notice and hearing, and after considering the financial resources of the parties, may order either spouse to pay a reasonable amount for his own costs and attorney's fees and for the costs and attorney's fees necessarily incurred *** by the other spouse, which award shall be made in connection with the following:
>
> (1) The maintenance or defense of any proceeding under this Act." Ill. Rev. Stat. 1989, ch. 40, par. 508(a).

Therefore, under the statute, the court may order the other spouse to pay a reasonable amount for attorney fees for services rendered in a proceeding under the Act. (*In re Marriage of Bashwiner* (1987), 155 Ill. App. 3d 531, 535.) "The awarding of attorney fees and

the proportion to be paid are within the sound discretion of the trial court and will not be disturbed on appeal, absent an abuse of discretion." (*In re Marriage of Bussey* (1985), 108 Ill. 2d 286, 299.) However, the amount awarded should be fair compensation only for those services which were reasonable and necessary to the action. *In re Marriage of Pitulla* (1990), 202 Ill. App. 3d 103, 111.

■ The criteria for determining whether fees are reasonable include: the number of hours expended; the skill and standing of the attorneys; the difficulty of the questions at issue; the importance of the subject matter, especially from a family law standpoint; the degree of responsibility involved in the management of the case; the usual and customary charge in the community; and the benefit resulting to the client. (*In re Marriage of Malec* (1990), 205 Ill. App. 3d 273, 285; *In re Marriage of McFarlane* (1987), 160 Ill. App. 3d 721, 729.) Of these factors, the most important is the amount of time necessarily spent on the case. *Malec*, 205 Ill. App. 3d at 285.

■ The fees allowed should only be in the amount necessary to compensate for services actually rendered and should be fair to both the party required to pay and the attorney requesting them. (*Malec*, 205 Ill. App. 3d at 285; *Gasperini v. Gasperini* (1978), 57 Ill. App. 3d 578, 582.) Justification of a fee requires more than the presentation of a compilation of hours multiplied by a fixed hourly rate. (*Pitulla*, 202 Ill. App. 3d at 112.) A petition for fees must specify the services performed, by whom they were performed, the time expended on the services listed, and the hourly rate charged. *Pitulla*, 202 Ill. App. 3d at 112; see also *In re Marriage of Ackerman* (1988), 168 Ill. App. 3d 438, 444.

■ Although Grund is obviously correct that Lipman's fees cannot be properly characterized as attorney fees, Grund was seeking to recover the fees under section 508(a) of the Act, apparently as necessary costs in the proceeding. Expert fees have been awarded under section 508(a). (See, *e.g., Head v. Head* (1988), 168 Ill. App. 3d 697, 703-04.) We hold that, in order to recover expert fees as necessary costs under section 508(a), the reasonableness of the fees must be established. The case law setting out the standards for determining the reasonableness of attorney fees provides useful guidelines for making this determination.

■ In order to recover the cost of the expert's fees, it was therefore Grund's burden to show that they were reasonable. We decline to put the burden on respondent, as Grund suggests, to "conduct the proper discovery" and present evidence to dispute the rea-

sonableness of the fees. The trial court therefore erred in putting the burden on respondent to show that Lipman's fees were unreasonable.

We conclude that, under these facts, Grund did not meet his burden to establish the reasonableness of Lipman's fees. The record contains only Lipman's curriculum vitae, which established that he has sufficient credentials to be considered an expert, Lipman's invoice, which does not indicate the time spent on any of the listed services or the hourly rate charged, and the rather unimpressive five-page report Lipman prepared. The bystander's report of proceedings does not relate any testimony regarding Lipman's fees. This record does not contain facts to establish the necessity and reasonableness of the expert witness' fees.

For the foregoing reasons, we modify that portion of the trial court's order which ordered respondent to pay Grund's attorney fees to state that the amount owed is $11,535.56, and we reverse that portion of the order which ordered respondent to pay Lipman's fees in the amount of $6,029.33.

Affirmed in part as modified; reversed in part.

REINHARD, P.J., and McLAREN, J., concur.