664 N.E.2d 281 (1996)
270 Ill. App.3d 270
215 Ill.Dec. 884
Lou May SAMPSON, Plaintiff-Appellee and Cross-Appellant,
v.
Lee MIGLIN, Defendant-Appellant and Cross-Appellee.
No. 1-94-3348.
Appellate Court of Illinois, First District, Fifth Division.
March 29, 1996.
Rehearing Denied May 1, 1996.
*283 Mayer, Brown & Platt of Chicago (Michael F. Kerr, James C. Schroeder and Laurie Gallancy), for cross-appellant.
Hinshaw & Culbertson of Chicago (D. Kendall Griffith, Kevin R. Sido and Adria East Mossing, of counsel), for cross-appellee.
Presiding Justice McNULTY delivered the opinion of the court:
Defendant, Lee Miglin, appeals from the trial court's judgment holding him liable to plaintiff, Lou May Sampson, for $544,223.50 in damages and $225,249 in costs and attorney fees. We find that the trial court overstated proven damages by $79,399.50 and, therefore, we modify the judgment. We affirm the award of costs and attorney fees.
In 1984 plaintiff bought a lot in Chicago's Gold Coast on which stood a five-unit apartment building. Defendant owned the building next door, which shared a masonry common wall with plaintiff's building. In January 1991, defendant began excavations to put in a basement as part of a complete remodeling of his building. He did not have a building permit, and he had not performed legally required investigations to determine the bearing capacity of the soil, the lateral pressure of adjacent soil, or the proper anchorage for the common wall.
On February 4, 1991, a tenant in plaintiff's building noticed a crack in the wall. Plaintiff spoke to workers on defendant's property, who said they would stop the work that was damaging the wall. They continued working without taking measures to protect plaintiff's building, and several days later plaintiff's other tenants called to tell her their doors did not open and close properly. The City of Chicago issued a stop work order before February 15, 1991. Plaintiff hired a structural engineer, who talked to defendant's contractor and looked at defendant's basement on February 15, 1991.
Defendant's contractor had attempted to underpin the common wall without the soil test or the supervision that building ordinances required. Defendant's architect later told plaintiff's engineer that the common wall had settled about one-half to three-quarters of an inch due to the lack of support during construction.
On March 8, 1991, plaintiff filed suit for a temporary restraining order and monetary damages. The court granted the restraining order and directed defendant to consult with plaintiff's structural engineer for proper stabilization of the common wall. Plaintiff hired Eugene Holland, a structural engineer who specialized in masonry remediation. Defendant hired a structural engineer on March 10, 1991, and that engineer worked with Holland throughout the subsequent construction. *284 The city issued a building permit on April 30, 1991, after Holland and defendant's architect and engineer performed the preliminary investigations that should have preceded excavation and agreed on plans for proper bracing.
The trial court dismissed several counts of the complaint. Plaintiff proceeded to trial on counts charging negligence, violation of building ordinances, and violation of the Adjacent Landowner Excavation Protection Act (Excavation Act) (Ill.Rev.Stat.1991, ch. 111½, par. 3300 et seq.). Defendant conceded violation of the ordinances and liability for damage to plaintiff's building prior to trial, but he contested the negligence count and the extent of the damages claimed.
[Editor's Note: Text omitted pursuant to Supreme Court Rule 23.]
The trial court found:
"Defendant's failure to comply with the procedural requirements regarding permit issuance allowed demolition and construction work to be performed on his building in an ill-designed and unworkmanlike manner. Excavation, anchorage and underpinning were done in violation of several statutes and ordinances. * * * Shoring and bracing technique was inadequate to support the common wall during excavation and underpinning. * * *
* * * [T]he experts and other professionals retained [by] plaintiff were made necessary by defendant's disregard of the law. The expenses were reasonably and necessarily incurred by plaintiff when she was confronted with the conditions presented her by [d]efendant. The fact that the tradesmen and professionals employed by plaintiff in her capacity as property owner may have become inextricably involved in the concurrent litigation does not negate the validity of plaintiff's claim for the bills they submitted as compensable damages."
[Editor's Note: Text omitted pursuant to Supreme Court Rule 23.]
The court found defendant liable for the $439,000 decrease in property value. The court awarded plaintiff almost $104,000 for out-of-pocket expenses, including about $98,000 for Holland's work. The court accepted plaintiff's calculation of $25,365 in rents lost up to the time of trial and awarded plaintiff $25,000 for the time and effort she spent working on problems defendant's construction caused. The total damages, thus, amounted to more than $593,000. The court reserved ruling on plaintiff's request for costs and attorney fees.
Defendant moved to vacate the award of Holland's fees because the judge at trial had said he would follow the same procedure for engineering fees as for attorney fees, permitting defendant to challenge the fee petitions in detailed evidentiary proceedings following the primary trial on damages. The court agreed and vacated the entire award of Holland's fees pending the hearing on attorney and engineering fees.
The court held that the Excavation Act and the Illinois Municipal Code (Ill.Rev.Stat. 1991, ch. 24, par. 1-1-1 et seq.) supported the request for attorney fees, but not the request for expert witness fees. The court ordered plaintiff to strike from her petition fees for work experts did "solely to render opinions at trial," but permitted recovery of engineering fees incurred for working with defendant's engineers to stabilize the building and for determining "the extent of the damage to [plaintiff's] property or the nature of the necessary repairs." Plaintiff's attorneys then struck from the attorney fee petition all charges for work on dismissed counts and the negligence count.
Holland presented 23 pages of invoices, which included summary descriptions of work his firm performed and indicated who performed the work, for all the hours charged. Holland had crossed out the charges for work as an expert witness. The invoices included many aggregated entries and entries for conferences that did not describe the subjects discussed, as, for example, on April 2, 1991, Holland charged for 2.25 hours of work described as:
"Telecons with [plaintiff's attorney]; prepare letter to [defendant's structural engineer]; review drawings and prepare letter; *285 telecon to [defendant's structural engineer]."
He eliminated more than $40,000 for services as an expert witness, but left a total request of more than $55,000 for engineering work.
Holland testified in support of his petition, describing some of the indicated meetings, but leaving most entries without further explanation. Defendant did not, on cross-examination, ask for elucidation of most of the entries. Holland testified that his contract with plaintiff required plaintiff to pay him interest on balances she had not paid for 30 days. He sought more than $4,000 in interest on unpaid engineering fees.
Plaintiff's attorneys submitted more than 400 pages of detailed invoices, indicating the hours each attorney spent each day on the case, with summary descriptions of the work performed. Many of the entries aggregated several separate tasks and included no specification of the subject of conferences, especially when the conferences were between plaintiff and the attorneys. Thus, one attorney indicated that on March 11, 1991, he spent 5.5 hours on the case, for:
"Court appearance * * *; drafting agreed order with defendant's attorney; prepare correspondence to defendant's attorney regarding schedule for repairs; prepare correspondence to Gene Holland * * * and Lou Sampson regarding status." (Emphasis omitted.)
Each attorney testified in support of the petition, describing in detail some of the meetings listed, but providing no further explanation for the vast preponderance of the thousands of entries. Defendant did not, on cross-examination, request further information about most of the entries.
The trial court found details missing from Holland's bills and said:
"Standing alone the entries would probably not be sufficient to support a finding of reasonableness * * *. However, the entries do not stand alone. The proceedings conducted here including [the] availability of Eugene P. Holland to answer all questions overcomes * * * the inadequate entries."
In the court's opinion the interest charge was a "standard and reasonable element of the contract and * * * interest is recoverable from defendant."
The aggregate entries in the attorney fee petition were "adequate[,] particularly within the context of this case, to support a fee award. * * * [T]his court has heard the case throughout the years of litigation. It has had the opportunity to observe the preparedness and skill of plaintiff's attorneys. The court believes it is capable of exercising an informed discretion as to how the tasks performed related to the litigation, whether they were necessar[y] and, therefore, to determine whether they were reasonable and thus, compensable."
The court concluded that
"the status entries in this case describe adequately for purposes of supporting a billing conversations with plaintiff conducted to advise her of the current state of her legal matter. * * * Reasonable consultation with the client is a necessary and proper aspect of the professional relationship of attorney-client. * * * [I]n the absence of evidence that status conferences did not take place or had no constructive purpose the court will not disallow such billings."
The court disallowed fees incurred in preparation of and proceedings on the fee petitions. The total award included $225,249 for costs and attorney fees, and $44,851 plus $4,399.50 interest for Holland's engineering work. After amending the damage award, the court found defendant liable for a total of $769,472.50. Defendant appeals and plaintiff cross-appeals from the judgment.
[Editor's Note: Text omitted pursuant to Supreme Court Rule 23.]
Defendant, relying primarily on In re Marriage of Winton, 216 Ill.App.3d 1084, 159 Ill.Dec. 933, 576 N.E.2d 856 (1991), maintains that plaintiff did not present adequate evidence to justify the award of Holland's engineering fees. The trial court in Winton awarded the petitioner fees for the work of her expert witness, who performed no services apart from the preparation of his testimony. The appellate court reversed the *286 award, holding that an award of expert witness fees must be supported by the same kind of detailed evidence needed to support an award of attorney fees.
In this case, however, the trial court denied plaintiff's request for recovery of fees for Holland's work as an expert witness. The court awarded only engineering fees for work Holland performed to prevent further damage to plaintiff's property. Defendant cites no authority requiring a bill for these services to meet the stringent standards for awards of attorney fees and expert witness fees.
Bills for services apart from expert witness and attorney services are generally "prima facie evidence of the necessity and reasonableness" of the services. Smith v. Champaign-Urbana City Lines, Inc., 116 Ill. App.2d 289, 291, 252 N.E.2d 381 (1969) (car repair bill); see also Barreto v. City of Waukegan, 133 Ill.App.3d 119, 130, 88 Ill. Dec. 266, 478 N.E.2d 581 (1985) (bills for medical services). In Smith, the sole witness who testified concerning the bill was unable to identify or explain all of the separate charges, and the bill was not fully itemized. The trial court found the proof of damages inadequate, and the appellate court reversed, holding that a bill itself is sufficient to support an award of damages "unless some evidence is introduced that the bill is faulty." Smith, 116 Ill.App.2d at 292, 252 N.E.2d 381.
The trial court here correctly observed that defendant cross-examined Holland and failed to challenge the entries or introduce any other evidence showing the bills improper. Because the court did not award Holland fees for his work as an expert witness, the bills and testimony here amply supported the award of $44,851 for Holland's engineering fee.
We agree with defendant that the award of prejudgment interest here must be vacated. "Prejudgment interest is not recoverable absent a statute or agreement of the parties providing for it." Weidner v. Szostek, 245 Ill.App.3d 487, 492, 185 Ill.Dec. 438, 614 N.E.2d 879 (1993). Plaintiff admits that no statute provides for prejudgment interest here and defendant never agreed to pay pre-judgment interest. She argues instead that her agreement with Holland supplies the necessary "agreement of the parties." Plaintiff's proposed interpretation would make the exception swallow the rule, because plaintiffs could generally agree to payment of interest on charges for repairs, medical costs and attorney fees, knowing that they might be able to recover the interest in the judgment. We hold that the parties who must agree to the payment of prejudgment interest are the parties to the lawsuit. Since defendant did not sign the contract with Holland or agree to the provision therein for prejudgment interest, we vacate the award of $4,399.50 for prejudgment interest included in Holland's bills.
Defendant challenges the entire award of attorney fees for lack of statutory authorization. The Municipal Code provides:
"In case any building or structure, including fixtures, is constructed, reconstructed, * * * or maintained * * * in violation of [a building] ordinance * * * any owner * * * who shows that his property or person will be substantially affected by the alleged violation, in addition to other remedies, may institute any appropriate action or proceeding * * * to restrain, correct, or abate the violation. * * *
* * * * * *
If an owner * * * files suit hereunder and the court finds that the defendant has engaged in any of the foregoing prohibited activities, then the court shall allow the plaintiff a reasonable sum of money for the services of the plaintiff's attorney." Ill. Rev.Stat.1991, ch. 24, par. 11-13-15 (now 65 ILCS 5/11-13-15 (West 1994)).
Plaintiff sued under the Code and the court found that defendant violated building ordinances. Defendant claims that plaintiff is not entitled to fees because her lawsuit merely duplicated the city's efforts shown by the city's stop work order.
To justify an award of fees,
"adjoining property owners must establish, at least, a substantial contribution, independent of the actions of the municipal authorities, to the ultimate success in correcting or preventing violations of the municipal *287 ordinances." City of Chicago v. Higginbottom, 219 Ill.App.3d 602, 607, 162 Ill.Dec. 76, 579 N.E.2d 890 (1991).
The record here shows only that, before plaintiff filed her suit, the city recognized that defendant had performed construction work without a building permit and, therefore, it issued a stop work order. Plaintiff's structural engineer participated in formulation of plans for adequate bracing, while no city engineer participated. Plaintiff also brought to light many violations of building ordinances to which no document from the city makes any reference. Plaintiff established her substantial contribution to the prevention and abatement of violations of building ordinances. The trial court correctly found a legal basis for an award of fees.
Defendant contends that the trial court had no basis for awarding fees for work plaintiff's attorneys performed after the engineers and architects brought the construction into full compliance with the building ordinances. By designing and installing proper bracing after doing the required tests, the engineers abated all of the violations of ordinances, at least by April 30, 1991, when the city issued a building permit. The Municipal Code mandates an award of attorney fees for work performed to "restrain, correct or abate" violations of building ordinances. The trial court found that after the violations were abated, the attorneys needed to pursue further remedies, including damages, to correct the past violations of ordinances.
The parties have cited no cases deciding what constitutes an action to "correct" an ordinance violation within the meaning of the Municipal Code. In Burroughs v. Hills, 564 F.Supp. 1007 (N.D.Ill.1983), rev'd on other grounds, 741 F.2d 1525 (7th Cir.1984), the plaintiffs argued that by permitting owners to sue to restrain ordinance violations "in addition to other remedies," the legislature established that plaintiffs could sue under the statute for damages. The federal court rejected the argument, holding that the provision meant only that the Municipal Code "does not preclude other remedies or rights of action available under other statutes or the common law." Burroughs, 564 F.Supp. at 1019-20. That court had no occasion to consider whether an action to "correct" a violation may, in some circumstances, require an award of damages under the statute. In appropriate cases, federal courts have held that statutes provided for awards of monetary damages necessary to correct statutory violations. See Fischer v. Haeberle, 80 F.Supp. 652, 656 (E.D.N.Y.1948) (back pay damages available as "corrective action"); Zazu Designs v. L'Oréal, S.A., 979 F.2d 499, 506 (7th Cir.1992) (explaining when damages are available to pay for "corrective advertising").
The legislature enacted the Municipal Code
"[t]o the end that adequate light, pure air, and safety from fire and other dangers may be secured * * * and that the public health * * * may otherwise be promoted * * *." Ill.Rev.Stat.1991, ch. 24, par. 11-13-1 (now 65 ILCS 5/11-13-1 (West 1994)).
These purposes are akin to the purposes of title V of the Environmental Protection Act (the Act) (415 ILCS 5/20 (West 1992)). Title V explicitly defined "corrective action" for an oil spill as:
"an action to stop, minimize, eliminate, or clean up a release of petroleum or its effects as may be necessary or appropriate to protect human health and the environment. This includes, but is not limited to, release investigation, * * * soil remediation, * * * and the provision of alternate water supplies." 415 ILCS 5/22.18(e)(1)(C) (West 1992).
See 415 ILCS 5/57.2, 57.6, 57.7 (West 1994). Thus, the Act clarifies that even after the offender is no longer violating the Act, the offender is liable for "corrective action" needed to "clean up" the damage his prior violation caused and to remedy any ill effect on the surrounding soil. In appropriate circumstances, a court may assess clean up costs for a violation of the Act. People v. Fiorini, 143 Ill.2d 318, 350, 158 Ill.Dec. 499, 574 N.E.2d 612 (1991).
We find that an action to "correct" a violation of building ordinances is similar to "corrective action" for violation of the Act. In most cases the violation of a building ordinance has no continuing repercussions once *288 the builder stops, abates, the violation. If an owner builds too close to a street, in violation of an ordinance, the entire harm is undone by shifting the construction site to the appropriate distance from the street.
Here, however, the builder began excavations without properly anchoring the common wall, in violation of an ordinance. Defendant abated the violation by installing adequate anchorage only after the wall had sunk, causing considerable damage to plaintiff's building. After abating the violation, defendant was in the position of one who has stopped spilling oil in violation of the Environmental Protection Act. Like a violator of the Act, defendant had not fulfilled his responsibilities under the Code by merely abating the violation. A violator of the Act must either clean up the spill himself or pay for cleaning it up and for soil remediation. 415 ILCS 5/22.18(e)(1)(C) (West 1992). Persons who have dumped waste in an illegal dump site may be liable under the Act for costs of cleaning up, even after they have stopped using the site, although the Act does not expressly provide for such damages. Fiorini, 143 Ill.2d at 326, 349-50, 158 Ill.Dec. 499, 574 N.E.2d 612. Similarly, the violator of the anchorage ordinance must either fully restore his neighbor's property to the condition it was in before the illegal construction allowed the wall to move or he must, as corrective action under the Municipal Code, pay for any damages caused by movement of the wall.
Defendant argues that the only remedy available under the Code is injunctive relief to bring the construction into accord with building ordinances. The injunctions can fully abate violations, but they would do nothing to remedy the continuing effects of past violations. Defendant's construction of the Code renders the term "correct" superfluous. "[I]n construing a statute, each provision and word should be given a reasonable meaning, and the statute will not be presumed to contain surplusage * * *." Jensen Disposal Co. v. Town of Warren, 218 Ill.App.3d 483, 490, 161 Ill.Dec. 247, 578 N.E.2d 605 (1991). Because the legislature used both "correct" and "abate" in the Code, "it appears that a distinction was intended between the two elements." People v. Frieberg, 147 Ill.2d 326, 349, 168 Ill.Dec. 108, 589 N.E.2d 508 (1992).
For "correct" in the Code to mean anything different from "abate," it must mean that the plaintiff may sue to force a defendant to take action to correct the harm caused by a violation, even after the violation is abated. Where correction by full restoration of the property to previolation conditions is not economically feasible, the defendant may need to correct the violation by paying damages. We agree with the trial court's holding that defendant is liable under the Municipal Code for damages needed to correct his past violation of building ordinances, even after the construction no longer violates the ordinances. All of plaintiff's attorneys' work to recover damages for past violations of building ordinances constitutes action to correct a violation, and for such action, the Code expressly mandates the recovery of attorney fees.
Defendant's last argument is that the fee award must be reduced because the court awarded fees for work described inadequately, in aggregated entries, and for work on the count charging violation of the Excavation Act. Plaintiff on her cross-appeal contends that the trial court erred by excluding fees incurred in preparing the fee petition. The determination of reasonable attorney fees rests in the sound discretion of the trial court. Warren v. LeMay, 142 Ill.App.3d 550, 582, 96 Ill.Dec. 418, 491 N.E.2d 464 (1986). Even where the trial court has, in its calculations, included improper fees or excluded recoverable fees, this court will not disturb the judgment unless "the total fees and costs awarded * * * was [so excessive or] so inadequate as to amount to a clear abuse of discretion by the court." Warren, 142 Ill. App.3d at 582, 96 Ill.Dec. 418, 491 N.E.2d 464.
The appellate court stated the basic principles for assessing fees in Chicago Title & Trust Co. v. Chicago Title & Trust Co., 248 Ill.App.3d 1065, 1072, 188 Ill.Dec. 379, 618 N.E.2d 949 (1993):
"[T]he party requesting fees bears the burden of presenting sufficient evidence from which the trial court can render a decision as to their reasonableness. [Citations.]

*289 A petition for fees must present the court with detailed records containing facts and computations upon which the charges are predicated and specifying the services provided, by whom they were performed, the time expended and the hourly rate charged. [Citations.] In assessing the reasonableness of fees, the trial court should consider a variety of factors, including the skill and standing of the attorneys employed, the nature of the case, the novelty and difficulty of the issues involved, the degree of responsibility required, the usual and customary charge for the same or similar services in the community, and whether there is a reasonable connection between the fees charged and the litigation."
The party seeking fees must present a sufficient basis for a determination of whether the charges are reasonable, but the trial judge may also consider the entire record and his knowledge of the case in determining the reasonableness of fees. Weidner, 245 Ill.App.3d at 493-94, 185 Ill.Dec. 438, 614 N.E.2d 879.
Here the fee petitions listed the attorneys and their services, hours and rates. See Kaiser v. MEPC American Properties, Inc., 164 Ill.App.3d 978, 984, 115 Ill.Dec. 899, 518 N.E.2d 424 (1987). While many entries included some aggregation of services, aggregation alone is not enough to require reversal of an award of fees. Harris Trust & Savings Bank v. American National Bank & Trust Co., 230 Ill.App.3d 591, 171 Ill.Dec. 788, 594 N.E.2d 1308 (1992). The petition also included a number of entries describing the subject of conferences between specified persons as "status."
The trial court rejected defendant's arguments against recovery for the work described in aggregated entries because the court found itself capable of determining the reasonableness and necessity of all the charges, based on the breakdown of specific tasks and the court's intimate knowledge of the case. The status entries also supported the award of fees because they reflected the necessary work of keeping the client fully informed about all aspects of her case. The court disallowed nearly $40,000 in fees, covering more than 150 hours of work, out of the request for more than $260,000 in fees. See Anundson v. City of Chicago, 15 Ill.App.3d 1032, 1040, 305 N.E.2d 376 (1973).
We agree with the trial court's holding that it had adequate information with which to determine the necessity of the time spent on the tasks listed in the aggregate entries here, and to determine the necessity of the conferences concerning the overall status of the case. The court found the legal issues novel and difficult, and the court took into account the attorneys' high degree of responsibility for representation in response to the tenacious, skilful defense. The attorney fees and costs of $225,249 represented less than 30% of the total award of almost $770,000. The trial court found that all damages derived from the initial violation of the building ordinances, so the Municipal Code provides a basis for the award of all fees reasonably necessary to correct the violation by recovering damages. We find the award of fees neither so excessive, nor so inadequate, as to amount to an abuse of discretion.
Finally, plaintiff on her cross-appeal seeks fees for her attorneys' appellate work. The court in Meyer v. Marshall, 66 Ill. App.3d 55, 59, 22 Ill.Dec. 819, 383 N.E.2d 627 (1978), held that the trial court erred by awarding fees under the Municipal Code "[s]ince appellate attorney fees are not specifically provided for in section 11-13-15." We see no need to reconsider that ruling here.
[Editor's Note: Text omitted pursuant to Supreme Court Rule 23.]
Because the trial court disallowed recovery for plaintiff's engineer's work as an expert witness, allowing recovery only for work to save plaintiff's building, the engineer's bills and testimony amply supported the award of $44,851 for the engineering fee. However, the trial court improperly ordered recovery of $4,399.50 in prejudgment interest on the engineer's bills.
The Municipal Code mandates an award of attorney fees for work done to correct a violation of a building ordinance. Under the particular facts of this case, in which correction by actual physical restoration of the property to its previolation condition was not practical, plaintiff recovered damages as corrective action under the Code, and the Code *290 mandated an award of fees for the work done to recover the damages. The evidence in the record formed a sufficient basis for the award of fees. Even if the trial court should not have included fees for work on the count charging violation of the Excavation Act, or if it should not have excluded fees for work on the fee petitions, we find the total fee award neither so excessive nor so inadequate as to constitute an abuse of discretion. Therefore, we reduce the damage award by $79,399.50, to $464,824, and we affirm the award of damages as modified and the award of $225,249 for costs and attorney fees, for a total judgment of $690,073.
Affirmed as modified.
COUSINS, J., concurs.
HOURIHANE, J., dissents.
Justice Hourihane, concurring in part and dissenting in part:
I concur with the majority opinion on all issues, but dissent with respect to the award of attorney's fees. Well settled rules of statutory construction provide that fee shifting statutes are in derogation of the common law and must be strictly construed. Carson Pirie Scott & Co. v. State Department of Employment Security, 131 Ill.2d 23, 49, 136 Ill. Dec. 86, 544 N.E.2d 772 (1989). The majority, however, interprets section 11-13-15 of the Illinois Municipal Code so broadly as to pervert its plain language and completely undermine the legislative intent of this section of the Code. Ill.Rev.Stat.1991, ch. 24, par. 11-13-15 (now codified at 65 ILCS 5/11-13-15 (West 1994)).
The Illinois Municipal Code provides in pertinent part:
"In case any building or structure, including fixtures, is constructed, reconstructed, * * * or maintained * * * in violation of [a building] ordinance * * * any owner * * * who shows that his property or person will be substantially affected by the alleged violation, in addition to other remedies, may institute any appropriate action or proceeding * * * to restrain, correct, or abate the violation.
* * * * * *
If an owner * * * files suit hereunder and the court finds that the defendant has engaged in any of the foregoing prohibited activities, then the court shall allow the plaintiff a reasonable sum of money for the services of the plaintiff's attorney." Ill. Rev.Stat.1991, ch. 24, par. 11-13-15 (now 65 ILCS 5/11-13-15 (West 1994)).
In interpreting statutes, this court must ascertain and give effect to the true intent and meaning of the legislature. Pliakos v. Illinois Liquor Control Commission, 11 Ill.2d 456, 143 N.E.2d 47 (1957). In so doing, we must give the language of the statute its plain and ordinary meaning; in other words, we may not declare that the legislature did not mean what the plain language of the statute imports. Maloney v. Bower, 113 Ill.2d 473, 479, 101 Ill.Dec. 594, 498 N.E.2d 1102 (1986). Here, the majority has strained the meaning of the term "correct" in order to give a meaning clearly not contemplated by the legislature or case law. As the court explained in Burroughs v. Hills, 564 F.Supp. 1007, 1019 (1983), the statute in question "creates a limited right of action on behalf of certain private parties to enforce municipal ordinances by way of injunction." By describing the private action as a proceeding to restrain, correct or abate a violation, the Illinois General Assembly did not contemplate the prosecution of a common law action for damages. To the contrary, an action to restrain, correct or abate remains, in essence, an action for injunctive relief.
Consequently, a private party is entitled to attorney's fees only to the extent that he or she establishes "a substantial contribution, independent of the actions of the municipal authorities, to the ultimate success in correcting or preventing violations of the municipal ordinances." City of Chicago v. Higginbottom, 219 Ill.App.3d 602, 607, 162 Ill.Dec. 76, 579 N.E.2d 890 (1991). Thus, any right to attorney's fees in this case ceased once the circuit court entered its original restraining order on March 8, 1991. Launius v. Najman, 129 Ill.App.3d 498, 502, 84 Ill.Dec. 420, 472 N.E.2d 170 (1984) ("Once compliance had been accomplished by the city's action, there was no basis upon which to award fees to plaintiff").
The majority, however, erroneously considers attorney's fees justified under the posture *291 of a "corrective action". The majority has confused an action to "correct" a zoning violation with an action to recover damages. In the process, the court has transformed what has heretofore been an Act limited to zoning enforcement into an action for negligence and damages.
By way of example, assuming hypothetically an adjoining landowner's property has been damaged as a result of a Code violation. Independent of the landowner's efforts, the local municipality obtains a stop order. The landowner later files an action sounding in negligence to recover for the damages to his or her property. If successful, the landowner may be awarded damages, but is not entitled to attorney's fees.
Suppose, however, as under the facts of this case, that the same landowner were to file an additional count pursuant to the Code under the theorynow supported by this court's opinionthat a "corrective action" is still viable. The successful landowner is now entitled to attorney's fees despite the fact that he or she contributed nothing "to the ultimate success in correcting or preventing violations of the municipal ordinances." City of Chicago v. Higginbottom, 219 Ill.App.3d 602, 607, 162 Ill.Dec. 76, 579 N.E.2d 890 (1991). In effect, the landowner has used the zoning enforcement statute to sponsor his or her otherwise generic common law action for damages.
Finally, the majority's use of an analogy to pollution remediation cases is misplaced. Aside from the fact that the language of the statutes differ in significant respectsTitle V's definition of "corrective actions" specifically includes "clean up" and "soil remediation"the whole tenor of the pollution remediation statutes reflects the public policy in achieving land reclamation. It is not surprising, therefore, that courts assess clean up costs for, among other things, soil remediation. Reimbursement of pollution "costs" under Title V, however, is clearly not analogous to the shifting of "attorney's fees" under the zoning enforcement section of the Municipal Code. Had the general assembly intended to incorporate Title V's expansive concept of "corrective actions" into the Municipal Code, it would have expressly so indicated.
For the foregoing reasons, I respectfully concur in part and dissent in part.