In re ESTATE OF HILLARD W. MARKS.—(LIEBERMAN, LEVY, BARON AND STONE, LTD., Petitioner-Appellee, v. LILA KEITH et al., Respondents-Appellants.)

First District (4th Division)   No. 78-512

Opinion filed July 12, 1979.

James D. Griffith, of Juron, Pauker, Rubin and Griffith, Ltd., of Chicago, for appellants.

Lewis R. Baron, Sherwin J. Stone, and David C. Roston, all of Lieberman, Levy, Baron and Stone, Ltd., of Chicago, for appellee.

Mr. PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

The children of the late Hillard W. Marks (the heirs) appeal from an award of attorney's fees in the amount of $148,703.75 made by the circuit court of Cook County to the petitioner, Lieberman, Levy, Baron & Stone, Ltd. (Lieberman). Lieberman represented the Northern Trust Company (Northern Trust) and Mary G. Oppenheim, co-executors of the Marks' estate, and also the Northern Trust as administrator to collect the assets of the estate until it qualified as co-executor.

The decedent died on November 20, 1972, leaving an estate valued at over $2,000,000. Lieberman filed a petition for an award covering legal services rendered to the estate from the date of death through November 1976 in the amount of $164,703.75. This figure included $16,000 for services to the Northern Trust as trustee of the Marks' family trust and as administrator to collect. Lieberman's calculation of fees was based solely on the time spent by its attorneys at hourly charges ranging from $40 to $80 per hour. On appeal, the heirs argue the amount of the award was unreasonably large.

The heirs classified the 2998 hours of services rendered in the following manner:

1. Sherman Marks claim. The decedent's brother, Sherman Marks, filed three claims against the estate, totaling $237,150.63, for monies

allegedly due him pursuant to various ventures. Lieberman eventually settled all three claims for a total of $7,750. Approximately 37 hours were spent on these matters.

2. Spir-Mark investment account. In 1972 the decedent filed suit to dissolve the Spir-Mark investment account, a partnership between the decedent and Robert Spircoff. Lieberman reviewed the proceedings and negotiated a settlement and sale of the decedent's partnership interest. The time spent on this was approximately 234 hours.

3. Horse trainer claims. Two horse trainers made claims against the estate in the total amount of $31,706.50. Lieberman negotiated with both trainers. One claim was eventually dropped and the other settled for $3,447. Approximately 20 hours were expended on these matters.

4. Tax questions. The Internal Revenue Service (IRS) was conducting an audit of the decedent's income tax returns covering a number of years at the time of his death. Lieberman consulted with the executors concerning issues raised by the audit and reviewed the 1972 return before it was filed. Lieberman also consulted with the executors concerning the preparation of gift tax returns in the decedent's name for the two years preceding his death. The time spent on these matters was approximately 58 hours.

5. Burial and reinterment. Lieberman opposed a petition by Helen Baron, a friend of the decedent's, by which she sought to have the decedent disinterred and then reinterred in another grave. Baron's petition was denied. Approximately 32 hours were spent on this.

6. Recovery of records. Baron was in possession of many of the decedent's financial records at the time of his death and refused to deliver them to the executors. Lieberman engaged in negotiations with her attorneys and made numerous court appearances in order to obtain access to those records. Approximately 42 hours were spent on this matter.

7. Insurance loan claim. Baron was the beneficiary of nine insurance policies on the decedent's life. The decedent made loans against the policies during his lifetime. Baron filed a claim against the estate seeking to recover the amount of the loans which had been deducted from the policy proceeds by the insurers. Lieberman reviewed documents, researched and subsequently filed a successful motion for summary judgment. Approximately 137 hours were spent on this matter.

8. Estate tax on life insurance proceeds. Lieberman filed suit in Federal court to compel Baron to pay the Federal estate taxes attributable to the life insurance proceeds. The suit was successful. Approximately 97 hours were spent on this matter.

9. Mortgage on condominium. The decedent's will directed his executor to pay a note secured by the mortgage on a condominium in Chicago. The decedent had previously given the property to Baron. The

co-executors treated this as a pecuniary legacy to be deducted from the claims of the estate against Baron. Baron filed a petition to require that the mortgage be paid off. The co-executors eventually cancelled the note and mortgage when it became clear that the estate's claims could be satisfied out of the $125,000 legacy provided for Baron in the will. Lieberman spent 23 hours on this.

10. Petition to remove co-executors. Baron filed a petition to remove the co-executors. Baron withdrew the petition after her bequest was paid. Approximately 40 hours were spent on this.

11. Baron's petition concerning estate tax. Baron never paid the $39,719.04 judgment representing her share of the estate taxes which had been entered by the Federal court. Therefore, the co-executors deducted the Federal court judgment, $4,400 for interest on that judgment, and $2,500 in additional estate taxes from her $125,000 legacy. Baron filed a petition to recover the latter two deductions. Lieberman answered the petition with a memorandum of law. Baron's petition was denied. Baron appealed that order to this court which affirmed the lower court. Approximately 20 hours were spent on this matter.

12. Communications with heirs. Lieberman communicated frequently with the parties interested in the estate. Approximately 47 hours were spent on this matter.

13. Conservator proceedings. The parties have provided no description of this category. Approximately 20 hours were spent on this matter.

14. Horse-chancery proceedings. This final category consumed the most hours in legal services and involved a number of different proceedings over an extended period of time. The decedent owned some horses at his death. However, the executors and Lieberman did not know the number or location of the horses. Lieberman located the horses, made arrangements for their care and sought court approval for their sale. That petition was opposed by Baron, who claimed a partnership interest in the horses. Lieberman engaged in protracted negotiations with Baron and eventually reached an agreement which allowed for the sale of four of the six horses. The other two were turned over to Baron.

Baron withdrew $57,000 from a checking account which she held jointly with the decedent on the day of his death. She also withdrew $28,000 from his horseman's accounts at race tracks during his last illness. Additionally, she deposited in her own bank account approximately $3,200 in payroll checks payable to the decedent. Lieberman initiated discovery to ascertain whether Baron had other estate assets. Baron was deposed by Lieberman on five separate days.

Baron filed a petition claiming that two of the six horses were hers and that she and the decedent had a partnership in the other four. This

claim was inconsistent with the decedent's income tax returns for the years 1966 through 1977, which showed sole ownership of the horses. Lieberman made an extensive investigation of the ownership of the horses. A two-day trial was held in the probate court and the cause was later transferred, without resolution, to be consolidated with the proceedings under way in the chancery division.

The chancery proceedings involved an action filed by Lieberman, on behalf of the executors, seeking a return from Baron of the various monies from the joint checking account, the horseman's accounts, and the payroll checks. Several judicial hearings and court orders were necessary to compel Baron's responses to Lieberman's discovery efforts. The trial was extended over a period of 34 days due to the court's congested calendar. The court eventually concluded that there was no partnership between the decedent and Baron; that the estate was thus entitled to recover the money from the horseman's account; that Baron was entitled to two of the horses; that Baron was not entitled to keep the proceeds of one of the three payroll checks; and that Baron had established her claim to the $57,000 from the checking account. A total of approximately 1951 hours were spent on these various matters.

The probate court conducted a hearing on the subject of the fees petition. The transcript from that hearing filled 600 pages. The parties each presented an "expert" witness in the form of disinterested attorneys who gave their opinions as to the reasonableness of the fees sought by Lieberman. The court also heard testimony from the individual Lieberman attorneys who worked on the case. They testified to the unusual complexity of the estate, the difficulties they had negotiating with Baron and her four successive sets of attorneys, the number of documents involved and the lengthy trial which was caused by the court's congested calendar. They also gave testimony concerning the length and quality of their respective legal experiences.

The Lieberman attorneys explained that the protracted litigation over the question of the partnership in the race horses was caused by the fact that if Baron prevailed there would be a real possibility of the IRS concluding that the decedent's tax returns, in which he claimed a sole proprietorship in the horses, were fraudulent. This in turn could have resulted in income tax deficiencies, fraud penalties, and interest totaling over $150,000.

On appeal, the heirs first argue the trial judge erred by uncritically giving Lieberman the exact fee requested where that fee was based solely on the hours expended. The heirs cite cases which have held it error for a court to rely solely on the time factor when determining the amount of a fees award. (See, *e.g., Neville v. Davinroy* (1976), 41 Ill. App. 3d 706, 355 N.E.2d 86; *Leader v. Cullerton* (1976), 62 Ill. 2d 483, 343 N.E.2d 897.) The

heirs also note that the expenditures in relation to the horse-chancery litigation amounted to $141,156.22 which produced a net recovery to the estate of only $10,819.28. They argue the probate court ignored this small recovery when it set the fee.

Lieberman responds that the heirs have improperly lumped together a number of different matters which they term the "horse-chancery" proceedings and that the amount of fees actually attributable to the decision to contest Baron's petition concerning the horses and to proceed with the accounting action is $85,000 rather than $141,000. They also contend that the tax fraud issue was a legitimate concern and that the success of the "horse-chancery" proceedings should be viewed in terms of saving the estate from a potential additional tax liability of $150,000.

■■ ■ The amount of an attorney's fee award for services provided by him to an executor of an estate is a matter within the province of the probate court. (*In re Estate of Jaysas* (1961), 33 Ill. App. 2d 287, 179 N.E.2d 411; *In re Estate of Brown* (1978), 58 Ill. App. 3d 697, 374 N.E.2d 699.) The amount of the award is determined by the probate court within the ambit of its judicial discretion. (*Jaysas; Brown.*) Each case rests upon its own facts and circumstances and there is no hard and fast rule which can be applied to determine what would be a reasonable award in each case. (*Jaysas; Brown.*) "The factors to be considered include the size of the estate, the work done and the skill with which it was performed, the time required, and the advantages gained or sought by the services or litigation." (*Jaysas*, 33 Ill. App. 2d 287, 292, 179 N.E.2d 411, 413.) The probate court has the necessary skill and knowledge to decide what is fair and reasonable compensation for legal services. The number of hours expended is an important factor in this determination and the probate judge will generally have the experience needed to make a reasonable approximation of the time various matters should require. (*Jaysas; Brown.*) For a reviewing court to alter a fee allowance made by a trial court, the reviewing court must be able to find that the trial court's determination is manifestly or palpably erroneous. A plain case of wrongful exercise of judgment would be necessary to justify a reversal. (*Jaysas; Brown.*) It has also been said that an award of attorney's fees will not be disturbed on appeal absent a manifest abuse of discretion. *Aluminum Coil Anodizing Corp. v. First National Bank & Trust Co.* (1978), 64 Ill. App. 3d 256, 381 N.E.2d 301.

The cases relied on by the heirs are inapposite. *Leader v. Cullerton* (1976), 62 Ill. 2d 483, 343 N.E.2d 897, involved a class action suit and is distinguishable from the instant cause not only on that basis but also because that court found significant duplication of hours among the three firms representing the plaintiff class and relied on the fact that no lengthy litigation was involved. There was no finding of duplication of effort here,

and Lieberman engaged in many in-court proceedings in order to defeat, or attempt to defeat, Baron's numerous claims against the estate.

*Neville v. Davinroy* (1976), 41 Ill. App. 3d 706, 355 N.E.2d 86, is also distinguishable in that the court there found "[i]n the case at bar the only evidence concerning the value of [the plaintiff's] services to [the defendant] related to the amount of time expended by [the plaintiff]." (41 Ill. App. 3d 706, 711, 355 N.E.2d 86, 90.) As will be expanded upon shortly, the court below had a broad basis of information on which to base its award in addition to the bare fact that Lieberman had expended 2,998 hours on the estate work.

■ Based on the principles set forth in the *Jaysas, Brown* and *Aluminum Coil* cases, we cannot say that the probate court's award of fees to Lieberman was manifestly or palpably erroneous, a wrongful exercise of judgment or a manifest abuse of discretion. The estate involved here was large, totaling over $2,000,000. The probate court heard voluminous testimony concerning the nature of the work done, the credentials of the attorneys who worked on the case, and the results achieved by each separate proceeding or negotiation. It also heard Lieberman's explanation concerning the possible tax ramifications if Baron's claim to the horses were to succeed. The information upon which the award was made was adequate in scope and included all the factors listed by the *Brown* and *Jaysas* courts. In light of the complexity of this estate, the different proceedings involved, and the remarkably persistent efforts of Baron to garnish a larger share, we cannot say the trial judge erred in awarding Lieberman the amount of fees it requested.

The heirs next argue that the "fraud issue" is illusory; that it was asserted as an afterthought to rationalize a disastrous result of an ill-conceived lawsuit. They assert that the IRS never filed a claim of tax fraud; that the IRS did not communicate with the estate concerning any possible tax fraud investigations; that fraud was not mentioned in the pleadings below; and that the "horse-chancery" litigation was not binding on the IRS because that agency was not a party to it.

Lieberman responds that there was a real possibility of a tax fraud proceeding by the IRS if Baron had succeeded in her claim to the horses and they urge that the probate court's award should be interpreted as implicitly accepting this fact. It asserts that even though the determination of the probate court is not binding upon the IRS, it would nevertheless be entitled to consideration and that a settlement of State court litigation is not entitled to similar consideration. Lieberman also asserts that the record contains no informed or expert testimony that they incorrectly evaluated the risk of fraud penalties and no support for the heirs' assertion that the IRS never communicated with the estate about a possible tax fraud claim.

We cannot read into the award of attorney's fees any conclusion by the probate court as to the merits or lack thereof of the tax fraud theory. Regardless of whether that issue was illusory, we find nothing in the record that would justify a reversal based on an improper exercise of discretion by the probate court. We thus cannot accept this argument of the heirs.

The heirs next argue it was error to deny their motion asking that Lieberman supplement its petition for fees so as to avoid an additional hearing on fees for the period subsequent to November 30, 1976. The only reason the heirs gave for the requested supplementation was to save the court's time. The court denied the motion. Under these circumstances, we cannot say the court improperly exercised its discretion in approving a fee award for an interim period.

Finally, the heirs argue that the inefficiencies of Lieberman's representation and other considerations demand a further reduction in the fee. They contend there was a duplication of effort when one attorney on the case was replaced by a different one, and that a reduction in fee should have been made to account for this. Additionally, the heirs complain of the fact that the attorney who logged the greatest number of hours in work on the estate was a Federal tax lawyer rather than a probate or litigation attorney; that the hourly rates charged by Lieberman were excessive; and that the probate judge allowed compensation for time spent preparing the petition for fees.

These matters were each brought to the attention of the court below at the hearing on the fee petition. We cannot say his failure to reduce the amount requested by Lieberman constituted an improper exercise of discretion. For the foregoing reasons the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

JOHNSON and LINN, JJ., concur.