917 N.E.2d 74 (2009)
334 Ill.Dec. 477
In re ESTATE OF Earl Eugene BITOY, Deceased
Rollin J. Soskin and Associates, Ltd., Petitioner-Appellant,
v.
Rudolph Bitoy, Adm'r, Respondent-Appellee.
No. 1-07-3258.
Appellate Court of Illinois, First District, First Division.
September 30, 2009.
*76 Thomas C. Crooks, Chicago, IL, Rollin J. Soskin, Rollin J. Soskin & Associates, Ltd., Lincolnshire, IL, for Appellant.
Frank R. Cohen, Michael J. Devine, Karen Kavanagh Mack, Lee R. Farbman, Deutsch, Levy & Engel, Chartered, Chicago, IL, for Appellee.
Presiding Justice HALL delivered the opinion of the court:
The petitioner, attorney Rollin J. Soskin (the petitioner), filed a petition in the circuit court of Cook County seeking attorney fees and related costs for work performed on behalf of the respondent, Rudolph Bitoy (Rudolph), the administrator of the estate of Earl Eugene Bitoy (the decedent). The circuit court awarded some but not all of the attorney fees and costs requested.
The petitioner appeals, raising the following issues: (1) whether the decision in Kaiser v. MEPC American Properties, 164 Ill.App.3d 978, 518 N.E.2d 424 (1987), applies to a petition seeking attorney fees and costs in a probate proceeding; (2) whether a fee agreement is relevant to the determination of a reasonable attorney fee in a probate proceeding; (3) whether the petitioner was entitled to fees for time spent in defending against spurious pleadings filed by the co-administrator; (4) whether the award of attorney fees and costs was disproportionate to the work performed so as to constitute an abuse of discretion; (5) whether the petitioner was entitled to fees for the time spent in objecting to other fee petitions; and (6) whether the probate court's findings were against the manifest weight of the evidence.

I. BACKGROUND

A. Probate Proceedings

On November 4, 2004, the probate court appointed Rudolph, Alvero Bitoy (Alvero), and Edward Bitoy (Edward), brothers of the decedent, to serve as co-administrators of his estate. The court's order further provided that, if due to their personal differences the co-administrators could not work together, they would be removed, and the court would appoint another administrator.
*77 On April 12, 2005, citing the inability of the co-administrators to cooperate, Alvero filed a petition to have Rudolph and Edward removed as co-administrators and to have a special administrator appointed. Following a mediation conference with Circuit Court Judge Arthur C. Perivolidis, the co-administrators were ordered to act by majority rule.[1] On July 25, 2005, Alvero's petition to remove the co-administrators was denied. On August 19, 2005, Alvero filed a second petition to have Rudolph and Edward removed as co-administrators. On October 5, 2005, Edward and Rudolph brought an emergency petition to remove Alvero as a co-administrator, based on his unilateral actions as to certain real estate and bank accounts in the estate. On January 11, 2006, following a hearing, the probate court removed Alvero as a co-administrator. After Edward resigned as co-administrator, the court ordered Rudolph to continue as sole administrator of the estate.

B. Complexity of the Estate

The decedent died on August 22, 2004, leaving no will. There were 21 estate beneficiaries. The decedent had been an Illinois lottery winner and had created the "BIG Partnership" into which the lottery winnings were paid. At the time of his death, there remained 8 installments of $866,000 each to be paid. In a January 2005 memorandum, the petitioner outlined the income and estate tax ramifications depending on whether lump sum payments or installment payments were chosen as the distribution method. There was also an issue concerning the adjustment of the partnership interests in the BIG Partnership. The tax issues were further complicated by the fact that neither the decedent nor the BIG Partnership had filed tax returns for a number of years. Finally, there were complications involved with the disposition of the decedent's real estate holdings.

C. Fee Petition Proceedings

On February 9, 2006, the petitioner filed a petition seeking attorney fees and costs for the period from November 10, 2004 to January 20, 2006 (the first fee petition). According to the petition, he had expended 1,055.6 hours in his representation of the estate and one or more of the administrators. Based on an hourly rate of $238.80 per hour, he sought $252,084.75 in fees and $3,838.09 in costs for a total of $255,922.84. Attached to the petition were copies of the invoices sent to Rudolph. Objections to the fee petition were filed by Alvero and several of the beneficiaries of the estate.
In its order of April 28, 2006, the probate court observed that the fee petition did not fully comply with the requirements of Kaiser v. MEPC American Properties, Inc., 164 Ill.App.3d 978, 115 Ill.Dec. 899, 518 N.E.2d 424 (1987). Although Kaiser was not a probate case, the court determined that it applied to fee petitions in a probate estate. The court noted that some 70 entries in the first fee petition were designated as reviewing or organizing files, which was "entirely non-descriptive." The court had even more difficulty with the entries in which individual time was aggregated to arrive at the time billed for a specific date. The court also noted that a number of the services rendered resulted from difficulties amongst the representatives of the estate. As to the costs requested, the court noted that certain costs billed were considered normal overhead expenses under Kaiser. The court awarded $177,000 in fees and $1,225.16 in costs to the petitioner.
On May 24, 2006, the petitioner filed a motion to reconsider the probate court's *78 April 28, 2006, ruling on fees and costs. While the petitioner maintained that Kaiser was not the correct standard to be applied in probate fee proceedings, he submitted the additional detail and documentation which he asserted brought the fee petition in compliance with the Kaiser requirements. He further maintained that the court had not addressed his request that any fees disallowed for time spent in connection with disputed matters should be charged against Alvero's distributive share. He argued that the fees for time spent in dealing with the difficulties of the estate were proper because Alvero's actions were contrary to the best interests of the estate. On October 31, 2006, the petitioner's motion for reconsideration was granted.
On April 27, 2007, the petitioner filed a second petition seeking attorney fees and costs for the period from January 21, 2006, through March 25, 2007 (the second fee petition). In the second fee petition, he alleged that he had entered into a written retainer agreement with Rudolph, Edward and their wives. The agreement provided for hourly rates of $185 to $350 per hour and for reimbursement of costs advanced or incurred. The petitioner further alleged that he had expended 445 hours of court and noncourt time in representing the estate and one or more of the administrators. He requested fees in the amount of $88,513.75 and costs in the amount of $1,522.78. The petitioner supported his fee request with copies of the invoices submitted to Rudolph and exhibits documenting the cost expenditures.
On September 6, 2007, the probate court held a hearing on the petitioner's first and second petitions for attorney fees and costs. The testimony at the hearing is summarized below.
Rudolph testified that he is the administrator of the estate of Earl Bitoy. He hired the petitioner to be the attorney for the estate and to represent him in his efforts to be named an administrator of the estate. The court sustained the objection to the introduction of the retainer agreement Rudolph had signed. Rudolph had reviewed the invoices received from the petitioner and understood that the amounts charged would be deducted from the amount to be distributed to the beneficiaries of the estate.
Rudolph further testified that he had questioned a double billing on one occasion and had objected to the rate at which the fees were charged. Rudolph acknowledged that he had signed the retainer agreement in which the hourly rates were set forth. He did not object to the first fee petition.
Rudolph further testified that the petitioner had ignored his wishes not to handle the estate's tax matters as Rudolph had a tax attorney to handle those matters. He also informed the petitioner before the estate was opened not to bring in one of the other administrators because there would be problems.
The petitioner testified that he had been a licensed attorney since 1979. In September 2004, he was retained by Rudolph and began representing both Rudolph and Edward in November 2004. After determining that the decedent did not leave a valid will and following several discussions, a joint petition seeking to have Edward and Rudolph appointed as administrators was filed. Other persons filed petitions seeking to be appointed administrators. At the court hearing, an agreement was reached whereby Rudolph, Edward and Alvero were named co-administrators. After it became apparent that the administrators could not reach unanimous decisions, the matter was brought back to court. An order was entered requiring that estate matters would be decided by *79 majority rule with the right to refer the matter back to the court. Because he was representing the majority of the administrators, the petitioner sent out copies of the orders to the beneficiaries to advise them of the status of the estate.
The petitioner testified further that the co-administrator arrangement ultimately did not work because Rudolph, Edward and Alvero were not speaking to one another. Conflicts arose over the hiring of real estate brokers to market the real estate and Alvero's unilateral action in freezing the estate bank accounts. After Alvero was removed as an administrator, Edward resigned, leaving Rudolph as the sole administrator.
According to the petitioner, the gross assets of the estate were approximately $7.8 million after the allowable deductions under the tax code. The largest asset was the lottery winnings. There were also three real estate parcels. There was difficulty in selling the real estate because one of the parcels was titled in the name of a friend of the decedent's as trustee. If sold together the parcels would generate more money, but the trustee was reluctant to sell. There were further complications when Rudolph refused to sell unless he received a certain amount of money. The offer eventually fell through. Another offer from a different party was made, but it was never submitted to the court.
The petitioner testified that after the probate court ruled on the first fee petition, he broke down the time entries and added the detail to the time records the court had indicated was necessary to comply with Kaiser. He explained the process as follows:
"We went through the  each bill would reference a letter to somebody. We went and looked through the files on matters that were described in each incident, telephone calls. We put it in context of what happened at the time it was going on at the time.
* * *
We went back and broke down each entry into increments of time. And we did not have much trouble actually remembering and recollecting and recreating in retrospect, but with the benefit of having spent half our time for 14 or 16 months on this case.
* * *
In fact, with the petition to reconsider we attached the letters that were referenced in those time entries. We attached tax returns or whatever other things were substantial amounts of time."
The petitioner explained his billing procedure as follows:
"As has been pointed out, we bill in quarter-hour increments. If someone calls or a task could be 5 minutes, we did not bill it unless it required a written response or some research. That's just our policy. That's how we do it. We don't bill 5 minutes, a quarter hour for 5 minutes. We just don't do it. If something takes 20 minutes, we only bill a quarter hour."
The petitioner explained that the estate was unusual in that there were 21 heirs and that 3 co-administrators were appointed. Alvero contested matters in ways that did not follow the probate code but, nevertheless, the petitioner was required to respond to them. The contests were ultimately disposed of adversely to Alvero. The fact that the estate involved lottery winnings also made it complex. There were income tax as well as estate tax ramifications to be considered. The lottery winnings also had to be valued. By choosing the lump sum and taking advantage *80 of the midterm rate and the alternative valuation date, the estate was saved approximately $90,000. The petitioner also succeeded in convincing the real estate appraisers that the real properties were overvalued. Based on the reduced appraised value, the estate was saved approximately $66,000. He also negotiated a settlement of a debt owed to the estate by Verneatha Bitoy, who had been loaned $150,000 by the decedent. He did not know the status of the settlement since he had forwarded the paper work to Rudolph's new counsel.
The petitioner explained that his firm handled the estate by assigning each task to the person with the lowest billing rate qualified to handle the task. The rates began at $85, subsequently raised to $110 for the paralegal, and $280 for an estate tax attorney. His own rate of $300 was scheduled to be raised to $350 in 2005, but he continued to bill the estate at the $300 rate for one more year.
In response to complaints raised as to the billing, the petitioner explained that it was more efficient for him to file documents if he were going to be at the courthouse rather than send a second person to do the filing even though that person billed at a lower rate. He denied that Rudolph ever requested that he refrain from doing the tax work in connection with the estate. Mr. Wolf, Rudolph's tax attorney, had referred the Bitoy estate to him, and he would have been happy to have Mr. Wolf do the tax work.
With regard to the tax problems related to the estate, the petitioner explained that neither the decedent nor the BIG Partnership had filed tax returns for the years 2000, 2001, 2002, and 2003. He described the decedent as "play[ing] fast and loose with his tax matters." The records had to be recreated from the decedent's unorganized paperwork. While penalties were assessed when the returns were filed, the petitioner succeeded in having them abated.
The petitioner denied billing for time he spent in seeking his own fees. The invoices reflected the time spent but that there was no charge for it. There were occasions when time was spent in seeking fees and objecting to the fees of other counsels, in which case only half the time was billed. There was an objection raised to his billing 0.5 hours for preparing an appearance in the case. The petitioner explained that the task required creating a file, preparing a service list and a notice of filing and reviewing the documents. He acknowledged that the Internal Revenue Service (the IRS) had rejected his plan for utilizing the tax rates of all the beneficiaries in an effort to save the estate some $500,000. While the Illinois Department of Revenue was willing to tax the beneficiaries' portions according to their tax rates, it would not do so unless the federal tax return could be filed the same way. All the estate tax work was done by the petitioner's firm. While using an outside accountant for the tax work might have been less expensive because the rate would have been lower, it was more efficient to do the work within the firm where all of the necessary information was available.
At Rudolph's request, the petitioner made adjustments to the invoices sent to him. In one case, three entries had been carried over from a previous bill; those were promptly credited. On another occasion when Rudolph complained that a charge had been improperly carried over to another bill, the petitioner disagreed but gave Rudolph the credit. He was asked to withdraw as Rudolph's attorney in July 2007.
The petitioner testified further that, as a result of taking on the estate work in this case, he found it prudent not to take on *81 other cases. He turned down three litigation matters that resulted in approximately $100,000 in billings to other firms.
At the close of the hearing, the circuit court stated as follows:
"It came as a shock at least to Mr. Soskin thatmaybe to everyone thatI do look at the Kaiser case. It's not a probate case. It has to do with a provision in a lease for the payment of fees, etc., that I view as being among the cases I look at to determine what a fee petition has to have. It also says a couple of other things. One of the things it says is that, in fact, that's what was done in this case, because whoever the petitioner was just came up with a figure and then had to backtrack and sayin fact, I think he testified that or she testified, whoever it is, well, I was in court on this day and there was an hour, and I got a letter here. And thatsee, that must have taken me 25 minutes or etc.
And I will consider counsel for the estate's argument that these are not contemporaneous time records. These are reconstructed time records. I'll also consider Mr. Soskin's argument that these are based on actual time records.
* * *
All in all, I think I may even have said this at the original hearing or in the order * * * I found that Mr. Soskin's work was of real good benefit to the estate and to a great extent saved the people that are paying the bill a lot of money."
On October 15, 2007, the probate court entered its final order on the fee petitions. With respect to the first petition for fees, the court noted the original problems with the entries and that in his petition for reconsideration, the petitioner maintained that additional detail had been added to the entries to comply with Kaiser. However, the court found that the records had been reconstructed, a practice that the court in Kaiser did not favor. The court also found some instances in which the entries did not add up to the time charged and multiple entries referred to the same task.
The court further found that a number of services billed resulted from the difficulties amongst the co-administrators of the estate and that there was a substantial amount of time spent overcoming their differences. The court pointed out that Ms. Ambrose, the petitioner's paralegal, billed nine hours for attending the removal hearing. The court questioned the need for those services since it was at the insistence of both the petitioner and counsel for Alvero that the court appointed the co-administrators.
As to the costs billed, the court found a number of the items charged were normal overhead expenses under Kaiser. In addition to the previously allowed costs of $1,225.16 for outside messenger services, fax charges and costs of certified copies, the court allowed an additional $837.02 for similar services and $1,216.43 for a special process server, parking and certified mail.
As to the second petition for fees, the court found that over $25,000 billed was for fee-related issues. The court noted that time billed for research on attorney fee objections, the writing of a letter concerning fee petitions and the objections, delivering the documents to court, and the preparation of documents and letters concerning the firm's withdrawal from a chancery action did not benefit the estate. As to the costs incurred, the court noted that no dates had been provided. It found that the certified mail involved the reconsideration petition and that the parking and *82 postage were overhead items.[2]
The court awarded the petitioner $182,000 in fees out of $253,084.75 sought and $3,278.61 in costs out of $3,838.09 sought in connection with the first fee petition.[3] In connection with the second fee petition, the court awarded the petitioner $55,000 in fees out of $85,513.75 sought and $727.18 in costs out of $1,522.78 sought.
On November 14, 2007, the petitioner filed his notice of appeal from the order of October 15, 2007.

II. ANALYSIS

A. Standard of Review

When awarding reasonable compensation pursuant to the Probate Act of 1975, the court has broad discretion to determine the amount to be awarded to the attorney. In re Estate of Shull, 295 Ill.App.3d 687, 691, 230 Ill.Dec. 360, 693 N.E.2d 489 (1998); 755 ILCS 5/27-2 (West 2006). This court will overturn the award only where the court's determination is manifestly erroneous. Shull, 295 Ill. App.3d at 691, 230 Ill.Dec. 360, 693 N.E.2d 489.

B. Applicable Principles

In In re Estate of Marks, 74 Ill.App.3d 599, 30 Ill.Dec. 502, 393 N.E.2d 538 (1979), this court set forth the standard for awarding fees to attorneys for services provided to the executor of an estate, stating as follows:
"The amount of the award is determined by the probate court within the ambit of its judicial discretion. [Citations.] Each case rests upon its own facts and circumstances and there is no hard and fast rule which can be applied to determine what would be a reasonable award in each case. [Citations.] `The factors to be considered include the size of the estate, the work done and the skill with which it was performed, the time required, and the advantages gained or sought by the services or litigation.' [Citation.] The probate court has the necessary skill and knowledge to decide what is fair and reasonable compensation for legal services. The number of hours expended is an important factor in this determination and the probate judge will generally have the experience needed to make a reasonable approximation of the time various matters should require. [Citations.] For a reviewing court to alter a fee allowance made by a trial court, the reviewing court must be able to find that the trial court's determination is manifestly or palpably erroneous. A plain case of wrongful exercise of judgment would be necessary to justify a reversal. [Citations.]" Marks, 74 Ill.App.3d at 604, 30 Ill.Dec. 502, 393 N.E.2d 538, quoting In re Estate of Jaysas, 33 Ill.App.2d 287, 292, 179 N.E.2d 411 (1961).

C. Discussion

1. Application of Kaiser to Fee Petitions in Probate Court
In Kaiser, the court considered the reasonableness of an award of attorney fees made pursuant to a fee-shifting clause in a lease agreement. Noting that an "appropriate fee consists of reasonable charges," the court set forth the following *83 requirements for the recovery of attorney fees:
"[T]o justify a fee, more must be presented than a mere compilation of hours multiplied by a fixed hourly rate or bills issued to the client [citation], since this type of data, without more, does not provide the court with sufficient information as to their reasonablenessa matter which cannot be determined on the basis of conjecture or on the opinion or conclusions of the attorney seeking the fees [citations]. Rather, the petition for fees must specify the services performed, by whom they were performed, the time expended thereon and the hourly rate charged therefor. [Citations.] Because of the importance of these factors, it is incumbent upon the petitioner to present detailed records maintained during the course of the litigation containing facts and computations upon which the charges are predicated. [Citations.]" Kaiser, 164 Ill.App.3d at 984, 115 Ill.Dec. 899, 518 N.E.2d 424.
While evidence of the actual number of hours spent by an attorney is relevant, the failure of the attorney to keep time records has been held not to negate the reasonableness of the fee awarded. In re Estate of Settle, 97 Ill.App.3d 552, 555, 52 Ill.Dec. 799, 422 N.E.2d 1008 (1981) (attorney fees awarded in defense of a will contest). In Settle, the petitioner-attorney submitted a schedule specifying by date and item the legal services rendered, and he testified as to his legal experience and how he estimated the number of hours he spent on the case. Settle, 97 Ill.App.3d at 554, 52 Ill.Dec. 799, 422 N.E.2d 1008. The reviewing court declined to find that the trial court abused its discretion in accepting as true the petitioner-attorney's estimate of his time to perform the services in the case. Settle, 97 Ill.App.3d at 556, 52 Ill.Dec. 799, 422 N.E.2d 1008.
Nonetheless, subsequent cases have indicated that detailed time records are in fact necessary. In In re Estate of Healy, 137 Ill.App.3d 406, 92 Ill.Dec. 159, 484 N.E.2d 890 (1985), the court recognized that the time expended was an important factor in determining the award of attorney fees. However, the court noted that the determination should not be based solely on the basis of a multiplication of the hourly rate by the time claimed to have been spent; "[t]his is true even where, as here, detailed time records are submitted, as they must be, to support the hours claimed [citation], for compensation may be awarded only for work which is reasonably required for the proper performance of the legal services involved. [Citations.]" Healy, 137 Ill.App.3d at 410, 92 Ill.Dec. 159, 484 N.E.2d 890.
In In re Estate of Halas, 159 Ill.App.3d 818, 111 Ill.Dec. 639, 512 N.E.2d 1276 (1987), the reviewing court upheld the probate court's disallowance of certain attorney fees based on the petitioner-law firm's inefficient administration of and unsubstantiated charges to the estate. The trial court's decision was based on its review of the billing records and the testimony at trial. As to the billing records, the reviewing court noted that "Many record entries showed that `several conferences' were held, without further detail regarding the identification of persons attending, topics discussed, or conclusions reached. The failure to keep proper records can greatly increase the difficulty in determining proper fees. [Citation.] This court has previously noted that adequate record keeping would enhance the faith and confidence of the client and the public." Halas, 159 Ill.App.3d at 833, 111 Ill.Dec. 639, 512 N.E.2d 1276. In finding the law firm's work inefficient, the probate court was "entitled to rely upon the absence of sufficiently detailed descriptions in the time *84 records." Halas, 159 Ill.App.3d at 833, 111 Ill.Dec. 639, 512 N.E.2d 1276.
Neither party in this case has identified a case either applying or denying the application of Kaiser to the determination of a reasonable fee in a probate case. In Will v. Northwestern University, 378 Ill. App.3d 280, 317 Ill.Dec. 313, 881 N.E.2d 481 (2007), this court observed that Kaiser was inapplicable to contingent fee cases; however, it "was still viable law in those situations where attorney fees were to be calculated on an hourly basis according to a noncontingency contract." Will, 378 Ill. App.3d at 302, 317 Ill.Dec. 313, 881 N.E.2d 481.
The petitioner's reliance on Wildman, Harrold, Allen & Dixon v. Gaylord, 317 Ill.App.3d 590, 251 Ill.Dec. 420, 740 N.E.2d 501 (2000), is misplaced. That case involved a breach of contract action for the recovery of attorney fees. Affirming the judgment for the plaintiff-law firm, the reviewing court distinguished fee petition cases where the reasonableness of the attorney fees were reviewed under the abuse of discretion standard from the reasonableness of an award of attorney fees in a breach of contract action where the manifest weight of the evidence standard applied. The court held that "the rules of law espoused in Kaiser * * * are limited to cases involving `fee petitions.'" Wildman, Harrold, Allen & Dixon, 317 Ill. App.3d at 598, 251 Ill.Dec. 420, 740 N.E.2d 501. While the court indicated that the stricter scrutiny of Kaiser was especially warranted in fee-shifting cases, the court did not state that Kaiser was limited to fee petitions in fee-shifting cases. The court only observed that there was an additional policy consideration in those situations based on the lack of a fiduciary relationship between the attorney and the party liable for the fees. Wildman, Harrold, Allen & Dixon, 317 Ill.App.3d at 596-97, 251 Ill.Dec. 420, 740 N.E.2d 501.
Courts have distinguished Kaiser where the record contained sufficient information for the court to determine the reasonableness of the fees. In Mountbatten Surety Co. v. Szabo Contracting, Inc., 349 Ill. App.3d 857, 285 Ill.Dec. 501, 812 N.E.2d 90 (2004), the supporting documentation listed each attorney, the time spent performing the services and a description of the services. The reviewing court found that the entries were adequate to inform the client and the court of what the attorneys were doing. The court distinguished Kaiser on the basis that only a summary of the records and an affidavit that the underlying records had been destroyed were presented in Kaiser. Mountbatten Surety Co., 349 Ill.App.3d at 874, 285 Ill.Dec. 501, 812 N.E.2d 90.
The ultimate question is whether the probate court has been provided with sufficient information to make a determination as to the reasonableness of the fees. The heightened level of scrutiny Kaiser requires provides the detailed information necessary to advise the probate court what task was done, by whom it was done and how long it took to accomplish even in the most complex of cases. These factors are necessary to the probate court's determination of the reasonableness of the fee. As such, the specificity required by Kaiser greatly aids the probate court in its efforts to determine if the tasks and time spent benefitted the estate and to arrive at a reasonable fee award.
We are not persuaded that the determination of a reasonable fee in a probate proceeding requires less detail than Kaiser requires, particularly in a complex estate. In the present case, the probate court's order indicated that it was not applying Kaiser in a mechanical fashion. Rather, the lack of the detail required by Kaiser *85 hampered the court's ability to decipher the contents of the fee petition and arrive at the determination of a reasonable fee. Echoing the view expressed in Halas, we observe that the greater attention to detail in billing can only decrease the number of disputes over fees and costs and better the relationship between attorneys and their clients.
The petitioner contends that, even if the Kaiser requirements apply, he supplied the additional detail necessary to comply with Kaiser. He argues that the disapproval by the court in Kaiser of reconstructed records was based on the specific facts of that case.
In Kaiser, the attorney represented to the trial court that the original records had been destroyed. The reviewing court concluded that the reconstruction of the hours spent on the case was more conjecture rather than an accurate computation of the time spent. Kaiser, 164 Ill.App.3d at 987, 115 Ill.Dec. 899, 518 N.E.2d 424. However, even prior to Kaiser, our court indicated a preference for contemporaneous billing records. In Halas, the attorney billed 603 hours but wrote only "work on estate." While a more detailed explanation was provided later, the reviewing court agreed that the explanation was not entitled to as much weight as a contemporaneous record. Halas, 159 Ill.App.3d at 833, 111 Ill.Dec. 639, 512 N.E.2d 1276.
The petitioner's own testimony supports the probate court's view that the records were reconstructed. In explaining how the detail was added to the billing records, the petitioner testified that, "we did not have much trouble actually remembering and recollecting and recreating in retrospect, but with the benefit of having spent half our time for 14 or 16 months on this case." The petitioner's testimony referring to "recreating" and "remembering" strongly suggests that the records in this case were subject to the same concerns as expressed by the court in Kaiser. It was reasonable for the probate court to determine that the newly detailed billing records were entitled to less weight than if the detail been recorded contemporaneously. We note that the court did increase the amount of the fees and costs from the amounts it awarded after the first hearing on fees. Thus, the court did not entirely dismiss the petitioner's efforts to clarify his fees with the reconstructed records.
We conclude that the probate court did not err by applying the requirements set forth in Kaiser to determine the reasonableness of petitioner's fees and costs in this case.

2. Relevance of the Written Retainer Agreement

a. Standard of Review

A court reviews a trial court's evidentiary rulings for an abuse of discretion. Schmitz v. Binette, 368 Ill.App.3d 447, 452, 306 Ill.Dec. 447, 857 N.E.2d 846 (2006). A trial court abuses its discretion only if it "`act[s] arbitrarily without the employment of conscientious judgment, exceed[s] the bounds of reason and ignore[s] recognized principles of law [citation] or if no reasonable person would take the position adopted by the court.'" Schmitz, 368 Ill.App.3d at 452, 306 Ill.Dec. 447, 857 N.E.2d 846, quoting Popko v. Continental Casualty Co., 355 Ill.App.3d 257, 266, 291 Ill.Dec. 174, 823 N.E.2d 184 (2005).

b. Discussion

Section 27-2 of the Probate Act provides that an attorney for a representative is entitled to a reasonable fee. 755 ILCS 5/27-2 (West 2006). The factors a court may consider in arriving at a reasonable fee include: "good faith, diligence and reasonable prudence used by the attorneys; time expended; the size of the estate; *86 the work that was done; the skills and qualifications of counsel; the novelty and complexity of the issues confronted; and the benefits conferred on the client by the legal services rendered." Halas, 159 Ill.App.3d at 832, 111 Ill.Dec. 639, 512 N.E.2d 1276. There is no reference in this list to retainer agreements entered into by attorneys and the representatives.
"[E]vidence is relevant if it has any tendency to make the existence of a fact that is of consequence to the determination of the action either more or less probable [than] it would be without the evidence." Downey v. Dunnington, 384 Ill.App.3d 350, 387, 324 Ill.Dec. 108, 895 N.E.2d 271 (2008). While what is relevant is admissible (Camco, Inc. v. Lowery, 362 Ill.App.3d 421, 433, 298 Ill.Dec. 332, 839 N.E.2d 655 (2005)), "`[i]rrelevant evidence is not admissible'" (Downey, 384 Ill. App.3d at 387, 324 Ill.Dec. 108, 895 N.E.2d 271, quoting Maffett v. Bliss, 329 Ill. App.3d 562, 574, 264 Ill.Dec. 741, 771 N.E.2d 445 (2002)).
Neither party has cited a case dealing with the relevance of a retainer agreement in the context of a fee petition under the Probate Act. In Healy, the court made reference to a fee agreement between the parties. There the attorney appealed from the denial of additional attorney fees he claimed were due for his representation of the estate beneficiaries. In affirming the denial of the fees, the court pointed out that no fee contract was admitted into evidence and that there was a dispute over the hourly rate to which the attorney claimed the beneficiaries had agreed. The court found that the attorney had failed to prove an agreement as to his fees, but also considered that the attorney failed to prove the value to the estate of the legal services rendered. Healy, 137 Ill.App.3d at 411, 92 Ill.Dec. 159, 484 N.E.2d 890. Because no agreement was presented in Healy, it is unclear how the terms of such an agreement would control the determination of reasonableness of the fees.
In reviewing the recovery of attorney fees under the Illinois Marriage and Dissolution of Marriage Act (Ill.Rev.Stat.1979, ch. 40, par. 508(a)), the appellate court reversed an award of attorney fees where the trial court was only concerned with enforcing the retainer. In re Marriage of Reczek, 95 Ill.App.3d 220, 222, 50 Ill.Dec. 844, 420 N.E.2d 161 (1981). The court pointed out that, pursuant to the statute, the attorney was entitled to recover fees from his client. However, the statute authorized only the payment of "reasonable fees" that were "necessarily incurred." Reczek, 95 Ill.App.3d at 222-23, 50 Ill.Dec. 844, 420 N.E.2d 161; Ill.Rev.Stat.1979, ch. 40, par. 508(a). The case was remanded to the trial court for the determination of a reasonable fee, applying the usual factors for determination: "the skill and standing of the attorney, the nature of the cause, the novelty and difficulty of the questions at issue, the amount and importance of the subject matter, the degree of responsibility, the time and labor required, the usual and customary charges, and the benefits resulting to the client." Reczek, 95 Ill. App.3d at 222, 50 Ill.Dec. 844, 420 N.E.2d 161.
The petitioner also argues that the probate court's failure to admit the retainer agreement, which specified that the client was responsible for costs, denied him an award of the costs he was entitled to under the agreement. The probate court did award the costs it determined were not part of the petitioner's overhead. However, just as the retainer agreement was not relevant to the determination of a reasonable fee, it is likewise not relevant to the determination of the reasonable and necessary costs.
*87 The cases relied on by the petitioner do not support his position. In Guerrant v. Roth, 334 Ill.App.3d 259, 267 Ill.Dec. 696, 777 N.E.2d 499 (2002), the appellate court reviewed the trial court's determination of whether the terms of a contingent fee agreement required the payment of certain costs; in contrast to this case, it was not reviewing the determination of the reasonableness of the costs in the context of a discretionary award under a statute. In Johnson v. Thomas, 342 Ill.App.3d 382, 276 Ill.Dec. 669, 794 N.E.2d 919 (2003), the reviewing court determined that costs could be awarded under both the Illinois and federal consumer statutes and remanded the case for clarification as to whether the costs were overhead, which were not recoverable, or reasonable and necessary recoverable costs. Johnson, 342 Ill.App.3d at 404, 276 Ill.Dec. 669, 794 N.E.2d 919.
We conclude that the retainer agreement between the petitioner and the respondent was irrelevant to the determination of a reasonable fee and reasonable costs under the Probate Act. Therefore, the probate court did not abuse its discretion in refusing to admit the retainer agreement into evidence.

3. Exclusion of Fees for Responding to Spurious Pleadings
The petitioner maintains that the probate court erred when it excluded fees for time spent in defending against the frivolous petitions filed by Alvero. The petitioner agrees that legal fees for services not in the interest of the estate or that do not benefit the estate should be rejected. In re Estate of Minsky, 59 Ill. App.3d 974, 979, 17 Ill.Dec. 501, 376 N.E.2d 647 (1978). However, he asserts that defending against the pleadings filed by Alvero served the interest of the estate.
"[T]he determination as to whether fees should be disallowed is a matter peculiarly within the discretion of the probate court." Halas, 159 Ill.App.3d at 831, 111 Ill.Dec. 639, 512 N.E.2d 1276. In this case, despite its own doubts as to the wisdom of appointing the three co-administrators, the probate court appointed them. Once the appointment was made, the petitioner, as the attorney for the other co-administrators, had little choice but to deal with the petitions and other pleadings filed by Alvero. The time spent in and out of court dealing with these matters culminated in the removal of Alvero as co-administrator and the appointment of Rudolph as the sole administrator. The petitioner's time expended in these matters therefore benefitted the estate.
The respondent maintains that there is no evidence that the probate court excluded any of the petitioner's fees for the time spent addressing Alvero's pleadings. However, in its final order, in ruling on the first petition for fees, the circuit court noted that a number of the services resulted from the difficulties amongst the co-administrators and that a substantial amount of time was spent filing pleadings, sending letters and in the trial of the petitions for removal of the co-administrators. The court specifically referred to the nine hours spent by the petitioner's paralegal attending the removal hearing.
In its order awarding fees and costs, the probate court disallowed over $100,000 in fees and costs but did not delineate clearly the fees it was excluding from the award. Therefore, this case must be remanded to the probate court for clarification as to whether the petitioner's fees for time expended in dealing with the various petitions filed by Alvero were disallowed.

4. Disallowance of Fees As "Punishment"
In a related argument, the petitioner contends that the fee award was "punitive" *88 and therefore an abuse of discretion because that the amount of the fees disallowed was grossly out of proportion to the value of the work he performed. The petitioner maintains that the probate court's disallowance of $103,500 in attorney fees was "punishment" for his responsibility in the court's appointment of the three co-administrators, whose inability to cooperate resulted in difficulties in the administration of the estate. In turn, those difficulties generated attorney fees for dealing with them.
In considering whether to grant reconsideration of its ruling on the petitioner's first fee petition, the court acknowledged that many of the problems in the administration of the estate arose from the appointment of the three co-administrators. The court acknowledged its share of the "blame" but noted that the attorneys "are the ones that take the heat." The context of the court's remarks indicate that it was addressing the tone of the complaints raised to the fee petition, not as to whether the work was necessary.
As indicated above, we agree that the petitioner was entitled to fees for the time spent addressing Alvero's pleadings. We do not agree with the petitioner that any of the remaining disallowed fees stemmed from the probate court's desire to hold him responsible for the difficulties created by the appointment of the three co-administrators. The court specifically pointed out that it found that the petitioner's work was of real benefit to the estate. At the same time, the court indicated that it would "look at the time that [the petitioner's] put in and say well, this was to no good end, and I'll discount it more than I would otherwise." The court's statement indicates that it was basing any disallowance of fees on whether the time spent benefitted the estate, and not, as the petitioner maintains, to punish him for the differences among the co-administrators.
The petitioner further argues that the fee award was an abuse of discretion because the excluded fees represented six months' work and therefore was "essentially a death knell" for a law firm the size of the petitioner's. While we are not unsympathetic to the practicalities of the practice of law, nonetheless, the petitioner cites no authority for the proposition that such a factor, in and of itself, constitutes a consideration in the determination of a reasonable fee. See 210 Ill.2d 341(h)(7) (failure to cite authority waives argument).
We conclude that the petitioner has failed to establish that the probate court disallowed any of his attorney fees solely because it held the petitioner was responsible for the appointment of the three co-administrators.

5. Exclusion of Fees for Objections to Other Fee Petitions
The petitioner contends that the circuit court erred in excluding $25,000 in fees incurred for objecting to the fee petitions of the other attorneys.
The petitioner acknowledges that he is not entitled to the time spent in preparing or litigating his own petition for fees. See Halas, 159 Ill.App.3d at 833, 111 Ill.Dec. 639, 512 N.E.2d 1276 (time spent in preparing and litigating a fee petition does not benefit the estate). He points out that his fee petition listed the time spent but indicated there was no charge for the services. The petitioner maintains that the $12,000 billed for objecting to the fee petitions of others resulted in a savings to the estate in that $38,470 in fees was denied, amounting to a net benefit to the estate in excess of $26,000. Since the estate benefitted from the time he expended, he asserts that $12,000 in fees should be allowed.
*89 Other than a citation to Minsky, the petitioner offers no authority in support of his argument that objecting to the fee petitions of others benefits the estate. Regardless of whether the petitioner filed objections to the other fee petitions, the probate court makes the determination as to whether fees should be granted and, if so, in what amount. That determination is made based on factors such as the work done, the qualifications of the attorney, the complexity of the issues and the benefits conferred by the attorney's work. Halas, 159 Ill.App.3d at 832, 111 Ill.Dec. 639, 512 N.E.2d 1276.
The ultimate question is whether the services provided by the attorney were in the interest of or benefitted the estate. Conceivably, there may be a case in which, by objecting to a fee petition of an attorney representing another party, an attorney brings to the probate court's attention information otherwise unavailable to the court and that aids the court in its determination of the appropriate fee. In this case, however, the petitioner has not demonstrated that, but for his objections to the fees claimed by other attorneys, the probate court would have awarded the entire amount of the fees and costs sought in the fee petitions filed by the other attorneys. Therefore, the petitioner has failed to establish that the time spent in raising objections to the other fee petitions, in and of itself, was in the interest of or resulted in a benefit to the estate in this case.
The petitioner further argues that the record does not support the circuit court's conclusion that $25,000 was attributable to the fee issue. The petitioner did not raise this issue below to allow the court to explain or correct the $25,000 computation. See Guerrant, 334 Ill.App.3d at 273, 267 Ill.Dec. 696, 777 N.E.2d 499. Moreover, as the court explained in its final order, the court was also disallowing fees for research on the fee petitions and work in connection with the petitioner's withdrawal from a chancery matter, all of which the court found did not benefit the estate. The petitioner failed to clarify with the court whether the latter charges were included in the $25,000 excluded fees.
This court has held that "because the determination of reasonable attorney fees rests in the sound discretion of the trial court, `[e]ven where the trial court has, in its calculations, included improper fees or excluded recoverable fees, this court will not disturb the judgment unless "the total fees and costs awarded * * * was [so excessive or] so inadequate as to amount to a clear abuse of discretion by the court." [Citation.]'" Guerrant, 334 Ill.App.3d at 273, 267 Ill.Dec. 696, 777 N.E.2d 499, quoting Sampson v. Miglin, 279 Ill.App.3d 270, 281, 215 Ill.Dec. 884, 664 N.E.2d 281 (1996), quoting Warren v. LeMay, 142 Ill. App.3d 550, 582, 96 Ill.Dec. 418, 491 N.E.2d 464 (1986).
We conclude that the probate court did not abuse its discretion in excluding the fees attributable to the time the petitioner expended objecting to the fee petitions of the other attorneys for the co-administrator and other beneficiaries.

6. Probate Court's Findings
Finally, the petitioner maintains that the disallowance of his requested fees and costs resulted from findings by the circuit court that were against the manifest weight of the evidence presented. We will address each finding individually.

a. Standard of Review

As noted above, the probate court has broad discretion to determine the amount of fees to be awarded to the attorney. Shull, 295 Ill.App.3d at 691, 230 Ill.Dec. 360, 693 N.E.2d 489. The court abuses its discretion if its decision is contrary to the manifest weight of the evidence. Gerber v. *90 Hamilton, 276 Ill.App.3d 1091, 1093, 213 Ill.Dec. 527, 659 N.E.2d 443 (1995). The court's judgment is against the manifest weight of the evidence if the opposite result is clearly evident. Gerber, 276 Ill. App.3d at 1093, 213 Ill.Dec. 527, 659 N.E.2d 443.

b. Discussion

i. Review of File Entries
The petitioner disputes the court's finding that up to June 21, 2005, the first fee petition contained 70 entries designated as "Review file" or "Organize file" or similar language. The petitioner maintains that only seven entries consisted solely of reviewing or organizing files and that these tasks were performed by legal assistants.
A review of the invoices reveals that the entries the court referred to were a combination of reviewing the file and another task, such as a telephone call or the preparation of a letter or the drafting of other documents. While the petitioner maintains that little or no time was spent reviewing the file, the entries do not indicate how the time was divided between the review of the file and the other task. The petitioner suggests that the "review file" could be disregarded and the time charged would still be reasonable for the described activity. The petitioner failed to make this argument in the circuit court, and therefore, we will not consider it. See Ragan v. Columbia Mutual Insurance Co., 183 Ill.2d 342, 355, 233 Ill.Dec. 643, 701 N.E.2d 493 (1998) (questions not raised in the trial court cannot be argued for the first time on appeal).

ii. Reconstruction of Time Records
The petitioner argues that the probate court's reliance on Kaiser's "dim view" of time reconstructions not based on contemporary records was misplaced in this case. The petitioner maintains that there was no reconstruction of the records; rather, existing documents and existing time records were used to provide more detail to the time entries. However, as we previously determined, the petitioner's own testimony established that the records were reconstructed.

iii. Additional Documentation
The probate court pointed out that the entries did not add up to the time charged and that several entries included multiple tasks under a general heading such as "All Tax Matters" with no breakdown of how the 2.50 hours were spent. The petitioner maintains that the attachment of the documentation demonstrates that all the matters under the entry had to do with tax matters. However, the existence of such documentation does not provide how the time was allotted to each matter under that category.[4]

iv. Letter and Delivery of Fee Petitions and ObjectionsSecond Fee Petition
The petitioner maintains that the court should not have disallowed the hour charged for the petitioner's work in organizing pleadings and delivering them to the court. The time entries indicate that the petitioner spent .50 hours drafting a letter to the court and .50 hours filing a supporting brief with the clerk, delivering courtesy copies to the court and faxing and mailing copies to the heirs and their attorneys.
These tasks were attributable to the fee petitions. As previously set forth, such time was properly excluded.

v. Fees for Legal Research Second Fee Petition
The petitioner maintains that the court should not have disallowed the charge for *91 his review of articles dealing with objections to attorney fees. As noted above, the time was attributable to the objections to the attorney fees and was properly excluded.

vi. Excluded Costs for Certified MailSecond Fee Petition
The petitioner maintains that the probate court's findings that there were no dates for the costs requested and that the certified mail costs were attributable to the fee petitions are not borne out by the record. The invoices attached to the fee petition merely listed the costs for the certified mailings. However, in an exhibit attached to the second fee petition, the petitioner provided photocopies of the certified mail receipts which contained the date of the mailing and a copy of the letter that was mailed. The letters were sent to the IRS, the Illinois Department of Revenue, as well as to beneficiaries. Only one appears to be related to the fees. The excluded cost amounted to $112.80.

vii. Time Billed for the Petitioner's Legal AssistantFirst Fee Petition
In its final order, the probate court questioned the need for Ms. Ambrose, the petitioner's legal assistant, to spend nine hours attending the hearing on the cross-petitions for the removal of the co-administrators "since it was at the insistence of both Mr. Soskin and Mr. Kenyon (Alvero's counsel) that the Court appoint co-administrators." The petitioner maintains that during the hearing, Ms. Ambrose assisted him with locating documents, maintained the list of documents that needed to be admitted into evidence, kept track of what evidence needed to be presented and took notes on the witnesses's testimony. The petitioner also maintained that Ms. Ambrose's status as a potential witness required her presence in the court.
The court voiced no other criticism of Ms. Ambrose's time expenditure. As we have previously determined that the petitioner was entitled to fees for the time he spent dealing with the petitions and pleadings filed by Alvero, he was entitled to fees for Ms. Ambrose's time attending the removal hearing.[5] If billed at the higher rate of $110, the charge for Ms. Ambrose's time would have been $990.
Except as to findings as to the costs and the charge for Ms. Ambrose's time, we conclude that the probate court's findings were not against the manifest weight of the evidence.
Reversal is required only if we determine that the total award of fees and costs was so inadequate as to amount to a clear abuse of discretion. See Guerrant, 334 Ill.App.3d at 273, 267 Ill.Dec. 696, 777 N.E.2d 499. In this case, the petitioner requested a total of $345,959.37 in fees and costs. The court awarded $241,005.79 in attorney fees and costs, a difference of $104,953.58. The court specifically found that the petitioner had rendered valuable services to the estate, but declined to award fees that were not sufficiently detailed in the fee petitions or did not benefit the estate, such as the time spent objecting to the fee petitions of other parties. As the improper exclusion of the costs and Ms. Ambrose's time charge involve relatively small amounts, they do not justify disturbing the award.

III. CONCLUSION
We find no clear abuse of discretion in the award of attorney fees and costs to petitioner in this case. However, in light of our determination that the petitioner's *92 time spent in dealing with the pleadings filed by Alvero was in the interest of the estate, the probate court must clarify that it did not disallow these fees in its order granting fees to the petitioner.
We affirm the judgment of the probate court but remand the cause to that court for clarification as to whether it disallowed attorney fees and costs to the petitioner for defending against Alvero's pleadings. If those fees were disallowed, the court shall amend its order awarding attorney fees and costs to include reasonable attorney fees for defending against Alvero's pleadings and related costs. If those fees and costs were not disallowed in the court's original order, the court shall amend its order to include that finding.
Affirmed and remanded with directions.
PATTI, J., concurs.
GARCIA, J., dissenting in part.
Justice GARCIA, dissenting in part:
I agree with the majority that the probate court disallowed certain fees sought by the petitioner because the court concluded the disallowed attorney fees did not benefit the estate. It is well established law that the probate court, in the exercise of its discretion, determines the reasonable fees an attorney may receive for legal services rendered to an estate. In re Estate of Healy, 137 Ill.App.3d 406, 410, 92 Ill.Dec. 159, 484 N.E.2d 890 (1985) ("compensation may be awarded only for work * * * reasonably required for the proper performance of the legal services involved").
"We have previously held that because the determination of reasonable attorney fees rests in the sound discretion of the trial court, `[e]ven where the trial court has, in its calculations, included improper fees or excluded recoverable fees, this court will not disturb the judgment unless "the total fees and costs awarded * * * was [so excessive or] so inadequate as to amount to a clear abuse of discretion by the court." [Citation.]' " Guerrant v. Roth, 334 Ill.App.3d 259, 273, 267 Ill.Dec. 696, 777 N.E.2d 499 (2002), quoting Sampson v. Miglin, 279 Ill.App.3d 270, 281, 215 Ill. Dec. 884, 664 N.E.2d 281 (1996). Against this standard, I cannot agree with the majority's finding that "[t]he petitioner's time expended in [responding to spurious pleadings] was in the interest of the estate" (334 Ill.Dec. at 490, 917 N.E.2d at 87), where no such finding was made by the probate court.
"[T]he determination as to whether fees should be disallowed is a matter peculiarly within the discretion of the probate court." In re Estate of Halas, 159 Ill.App.3d 818, 831, 111 Ill.Dec. 639, 512 N.E.2d 1276 (1987). This is so because "[t]he probate court has the necessary skill and knowledge to decide what is fair and reasonable compensation for legal services." In re Estate of Marks, 74 Ill.App.3d 599, 604, 30 Ill.Dec. 502, 393 N.E.2d 538 (1979). Unlike the majority, I find no basis in the record to conclude that the probate court may have abused its discretion in disallowing fees for the petitioner's efforts in responding to what we all agree are properly characterized as "spurious pleadings." It follows that there is no need to remand this matter for "clarification." 334 Ill.Dec. at 490, 917 N.E.2d at 87.
To the extent clarification is needed, the remand should direct the probate court to determine in the first instance whether the attorney fees charged to respond to spurious filings benefitted the estate, a matter within the probate court's discretion.
Even if it falls to us to determine whether the estate benefitted by the petitioner's expenditure of time in responding to spurious filings, the record does not support the majority's affirmative finding. Filings that are transparently spurious require little, if any, response. I submit that it was *93 well within the probate court's skill and knowledge to recognize spurious filings, no less so than the petitioner was able to do. It follows that it was within the probate court's discretion to conclude that the time the petitioner spent on responding to spurious filings was not in the best interest of the estate, because the responses highlighted the obvious.
I am unconvinced that the large amount of fees and costs disallowed by the probate court requires anything more than that which the probate court set forth in its ruling. There is no need for a partial remand.
NOTES
[1] Judge Perivolidis heard the matter during Judge Malak's absence.
[2] However, the court had previously awarded parking and certified mail costs with respect to the first fee petition.
[3] The petitioner had originally been awarded $177,000 in fees and $1,225.16 in costs in the first fee petition. The court increased the fees by $5,000 and the costs by $2,053.45.
[4] On the other hand, the aggregation of services alone is not enough to reverse a fee award. Sampson, 279 Ill.App.3d at 281, 215 Ill.Dec. 884, 664 N.E.2d 281.
[5] According to the petitioner, Ms. Ambrose's time was billed originally at $85 per hour; later it was raised to $110 per hour. At $85 per hour for 9 hours, the charge would have been $765.